# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

| | | |
|---|---|---|
| **ROBERT GOMEZ, ALVARO RODRIGUEZ, ERIC BORUNDA, and DANIEL PORRAS,** *Individually and on Behalf of All Others Similarly Situated*,<br><br>*Plaintiffs*,<br><br>v.<br><br>**GLOBAL PRECISION SYSTEMS, LLC and ASSET PROTECTION AND SECURITY SERVICES, LP**,<br><br>*Defendants*. | § § § § § § § § § § § § § | **EP-21-CV-00269-DCG** |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiffs move to amend their Complaint to add about 150 new named plaintiffs. Mot. Amend, ECF No. 24; Reply, ECF No. 31. Both Defendants oppose the Motion. GPS Resp., ECF No. 27; Asset Resp., ECF No. 28. For the following reasons, the Court DENIES Plaintiffs' Motion but EQUITABLY TOLLS the statute of limitations for those individuals whom Plaintiffs seek to add as named plaintiffs. The Court tolls the statute of limitations for those people from the day Plaintiffs filed their Motion (May 13, 2022) to the day this Court decides whether this case can properly proceed as a collective action.

## I.   BACKGROUND

Plaintiffs are current or former employees of Defendants Global Precision Systems, LLC ("GPS") and Asset Protection and Security Services, LP ("Asset") (collectively, "Defendants").[1] Compl., ECF No. 1 ¶¶ 4–7, 13–14. Both GPS and Asset are government contractors operating at

---

[1] Plaintiffs are Robert Gomez, Alvaro Rodriguez, Eric Borunda, and Daniel Porras. Compl., ECF No. 1 ¶¶ 4–7. Three Plaintiffs (Robert Gomez, Alvaro Rodriguez, and Eric Borunda) are current or former employees of GPS. Compl. Exs. A, B, C. One Plaintiff (Daniel Porras) is a former employee of Asset. Compl. Ex. D.

the El Paso Immigration and Customs Enforcement ("ICE") Facility.  *Id.* ¶¶ 23–24.  GPS

supplies detention officers for the ICE Facility; Asset supplies detention and transportation

officers.  *Id.* ¶ 25.  Plaintiffs, who are or were detention officers, allege that GPS and Asset

required them to work "off the clock" before and after their scheduled hours.  *Id.* ¶¶ 37–40.

Plaintiffs argue that by engaging in this practice GPS and Asset violated the Fair Labor

Standards Act ("FLSA")—specifically, 29 U.S.C. § 207—by failing to pay time-and-a-half for

all hours worked in excess of 40 hours during a workweek.  Compl. ¶¶ 60–67.

 Plaintiffs bring this case as a potential collective action under the FLSA.  *Id.* ¶¶ 66–67.

Because collective actions are unique and complicated lawsuits, it helps to review some basics.

A collective action allows one or more employees, "for and [on] behalf of himself or themselves

and other employees similarly situated," to sue their employer for alleged violations of certain

statutory employment requirements, such as payment of minimum wage and a cap on the number

of working hours.  *See* 29 U.S.C. § 216(b).  In plainer terms: A collective action empowers a few

employees to challenge employer conduct on behalf of many employees, so long as all the

employees who seek recovery are "similarly situated."  *See id.*

 When employees are "similarly situated" we know that the experience of one employee is

representative of the experience of another.  *See Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442,

459 (2016).  Because the experience of one can tell us about the experience of another, a

collective action lets plaintiffs (and defendants) take advantage of representative evidence—that

is, sample or statistical evidence that may establish (or negate) liability on a collective-wide

basis.[2]  *See id.* at 455–57 (explaining that "representative evidence" can be "a permissible

---

 [2] In providing for collective actions, Congress's goal was to give employees "the advantage of
lower individual costs to vindicate rights by the pooling of resources."  *Hoffmann-La Roche Inc. v.
Sperling*, 493 U.S. 165, 170 (1989); *see also Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 515–16
(2d Cir. 2020).  "This results in the 'efficient resolution in one proceeding of common issues of law and

means" of "proving individual injury").  *Compare id.* at 458–59 (explaining that representative evidence works to prove liability where the employees' experiences are similar), *with Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 355–60 (2011) (holding that statistical evidence cannot establish class-wide liability where plaintiffs could not show a "commonality of issue[s]").

The ability to derive conclusions from a representative sample makes collective actions "representative actions."  In other words, collective actions allow plaintiffs to attempt to establish liability without having to individually litigate each plaintiff's claim.  *See Tyson Foods*, 577 U.S. at 459 ("[T]he experiences of a subset of employees can be probative as to the experiences of all of them."); *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1116 (9th Cir. 2018) ("[T]he theoretical alternative to collective litigation is the possible proliferation of individual actions . . . litigated seriatim.").

Because "similarly situated" is the key that unlocks the collective action, courts must first determine whether the named plaintiffs are similarly situated to other employees.  *See Swales v. KLLM Transp. Servs., LLC*, 985 F.3d 430, 434 (5th Cir. 2021) ("[A] district court must rigorously scrutinize the realm of 'similarly situated' workers . . . [to] determine whether [potential opt-in plaintiffs] are actually similar to the named plaintiffs."); *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 915–16 n.2 (5th Cir. 2008)  If a court finds that employees are similarly situated, the court may facilitate sending a notice to the similarly situated employees letting them know that they can opt into the collective.[3]  *E.g.*, *Hoffmann-La Roche*, 493 U.S. at

---

fact arising from the same alleged' FLSA violation."  *Scott*, 954 F.3d at 516 (quoting *Hoffmann-La Roche*, 493 U.S. at 170).

[3] The opt-in rule for collective action differs from class actions, which, with limited exceptions, operate on an opt-out basis.  *See, e.g.*, *Swales*, 985 F.3d at 435 ("Section 216(b)'s opt-in mechanism differs from Rule 23[(b)(3)] class actions, where members are bound by the judgment or settlement unless they affirmatively opt out.").  *But see Ebert v. Gen. Mills, Inc.*, 823 F.3d 472, 480 (8th Cir. 2016) (describing types of class actions from which class members may not opt out).

169–72; *In re JPMorgan Chase & Co.*, 916 F.3d 494, 500–01 (5th Cir. 2019) ("To keep the opt-in process efficient, district courts have discretion to facilitate notice to potential plaintiffs." (cleaned up)).  Those that opt into the collective are sometimes called "opt-in plaintiffs."[4,5]

The Fifth Circuit has recently changed the inquiry a district court must perform when considering whether to allow an FLSA case to proceed as a collective action.  Courts in this Circuit used to facilitate sending a notice to potential opt-in plaintiffs after "conditionally certifying" the collective—a step that required little evidence and only a modest showing that employees were similarly situated.[6]  *E.g.*, *Sandoz*, 553 F.3d at 915–16 n.2 ("The district court [] decides, usually based on the pleadings and affidavits of the parties, whether to provide notice to fellow employees who may be similarly situated to the named plaintiff, thereby conditionally certifying a collective action.").  Under this conditional certification procedure, a district court would not finally decide whether putative plaintiffs were similarly situated to named plaintiffs until the parties completed discovery.  *Id.*

In 2021, however, the Fifth Circuit abrogated the conditional certification procedure in *Swales v. KLLM Transport Services, LLC*, reasoning that "nothing in the FLSA, nor in Supreme

---

[4] The nomenclature used to refer to the different plaintiff groups in a collective action can be somewhat confusing, so some clarification is warranted.  When the Court refers to "named plaintiffs," it is referring to the plaintiffs named in the complaint.  "Opt-in plaintiffs" are those that opt into the collective.  A "party plaintiff" is any plaintiff—either named or opt-in—that is similarly situated and will be bound by the court's ruling.  *See Scott*, 954 F.3d at 516; *Sandifer v. Surma*, No. 2:07-CV-443-RLM-PRC, 2008 WL 11388613, at *4 (S.D. Ind. June 19, 2008) (describing the role of "named plaintiffs" as "representative plaintiffs in the action" and difference between "party plaintiffs" who are all plaintiffs, including opt-ins, who are "bound by the [c]ourt's rulings").

[5] Opt-in plaintiffs do not participate in a collective action in the same way named plaintiffs do.  For example, opt-in plaintiffs need not plead plausible claims for relief.  *E.g.*, *Rosario v. First Student Mgmt. LLC*, 247 F. Supp. 3d 560, 566–67 (E.D. Pa. 2017) ("[T]he law does not require 'every plaintiff' or 'every member of a collective action' to meet the pleading standards of Rule 8.").

[6] This approach roughly followed that outlined in *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987), which the Fifth Circuit rejected.  *See Swales*, 985 F.3d at 439–41, 443.

Court precedent interpreting it, requires or recommends (or even authorizes) any 'certification' process." 985 F.3d at 440. *Swales* sets out a "gatekeeping framework"—or a three-step process—for the initial phase of a potential collective action. *Id.* at 440–41. Before proceeding with the merits phase of the case, a district court must:

(1) "identify . . . what facts and legal considerations will be material to determining whether a group of 'employees' is 'similarly situated'";

(2) "authorize preliminary discovery accordingly;" and

(3) then determine, based on facts from that discovery, whether plaintiffs are similarly situated and whether other employees should receive an opt-in notice.

*Id.* at 441; *see also* 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives consent in writing to become such a party and such consent is filed in the court in which such action is brought."). Put differently, with conditional certification jettisoned, courts must now, at the outset of the case, determine whether any employees are similarly situated. Only then can a court determine whether the case can properly proceed as a collective action.

With that background, the Court returns to Plaintiffs' Motion. Plaintiffs don't seek to determine which employees are similarly situated and thus could opt into the collective; rather, they seek to amend their complaint to add nearly 150 individuals as new named plaintiffs. *See generally* Mot. As discussed below, allowing Plaintiffs to amend to add this many named plaintiffs would bypass the collective action procedure.

That said, Plaintiffs seek leave to amend in order to preserve the rights of the nearly 150 individuals by tolling the statute of limitations for those employees. Reply at 4 ("This amendment is necessary to stop the statute of limitations because each Plaintiff is entitled to their pending claims and compensation under the FLSA under the same allegations."). The Court

agrees that it must preserve those individuals' rights and thus will equitably toll the statute of limitations for the potential opt-in plaintiffs that Plaintiffs seek to add as named plaintiffs.

## II.   DISCUSSION

Plaintiffs base their request to add named plaintiffs on Federal Rule of Civil Procedure 15(a)(2), which governs when plaintiffs may amend their pleadings.  Mot. at 1–2; *see generally* FED. R. CIV. P. 15.  Defendants protest that Rule 15(a)(2) is an inappropriate procedural mechanism for adding named plaintiffs in this case.  GPS Resp. at 3–11; Asset Resp. at 3–6, 13–14.  Defendants argue that, in a potential collective action, the FLSA and *Swales* govern the addition (and joinder) of plaintiffs, not Rule 15.  GPS Resp. at 3–10; Asset Resp. at 3–6.  Alternatively, Defendants argue that Federal Rule of Civil Procedure 20—which governs the permissive joinder of parties—applies instead of Rule 15.  GPS Resp. at 3–4, 10–11; Asset Resp. at 13–14.

### A.  Adding Named Plaintiffs

Rule 15(a)(2) allows a party to amend its pleadings after its opponent or the court consents.  FED. R. CIV. P. 15(a)(2).  Generally, courts should freely grant leave to amend under Rule 15(a)(2).  *E.g.*, *id.*; *Jones v. Robinson Prop. Grp., LP*, 427 F.3d 987, 994 (5th Cir. 2005).  Nevertheless, courts do not grant leave automatically; instead, courts "consider a variety of factors" when deciding whether to give leave, including "undue prejudice to the opposing party . . . and futility of the amendment."  *Jones*, 427 F.3d at 994.

Rule 20 allows several plaintiffs to join in one action if:

(A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

(B) any question of law or fact common to all plaintiffs will arise in the action.

FED. R. CIV. P. 20(a)(1).  If plaintiffs meet the Rule 20 test, courts generally allow joinder. *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 521 (5th Cir. 2010).  Permissive joinder is, however, ultimately discretionary and courts can "refuse joinder in the interest of avoiding prejudice and delay, ensuring judicial economy, or safeguarding principles of fundamental fairness." *Id.* (citations omitted).

In general, courts may, as Plaintiffs argue, grant leave to amend to add or remove plaintiffs under Rule 15(a)(2).  *See, e.g.*, *Vera v. Bush*, 980 F. Supp. 254, 255–57 (S.D. Tex. 1997) ("[N]ew plaintiffs may be added to an action under Rule 15(a)"); *Joshlin v. Gannett River States Pub. Corp.*, 152 F.R.D. 577, 579 (E.D. Ark. 1993) (denying class action certification but permitting addition of 53 named plaintiffs under Rule 15(a)); CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1474, 1474 n.22 (3d ed.) ("[A] party may make a Rule 15(a) amendment to add . . . parties to the action."); *cf.* FED. R. CIV. P. 15(c)(1)(C) (implying that party changes may be made under Rule 15).  Defendants suggest otherwise, arguing that if the Federal Rules of Civil Procedure provide the applicable standard here, then Rule 20 applies.  *See* Asset Resp. at 3–14 (arguing FLSA and *Swales* govern addition of parties, and, if not, Rule 20 does); GPS Resp. at 3–4 (similar).  The Court need not resolve this dispute.  As Defendants point out, the FLSA provides the applicable standard.

Sometimes, special rules for adding (or joining) plaintiffs apply.  At some point, too many individual plaintiffs, each having to separately litigate their claims, creates a hectic if not unworkable scenario for all involved in the litigation.  *Compare Acevedo*, 600 F.3d at 522 (affirming district court's decision to deny Rule 20 joinder of 800 plaintiffs when trying the claims together "would be too challenging logistically"), *with Allen v. Atl. Richfield Co.*, 724 F.2d 1131, 1135 (5th Cir. 1984) (allowing 22 people to join FLSA suit as named plaintiffs, but

emphasizing that the case never became a collective action because no unnamed plaintiff ever

opted in to the suit); *see also* Scott A. Moss & Nantiya Ruan, *The Second-Class Action: How*

*Courts Thwart Wage Rights by Misapplying Class Action Rules*, 61 AM. U. L. REV. 523, 526–27

(2012) ("[J]oinder becomes infeasible with too many plaintiffs.").  Congress recognized this

potential inefficiency and thus prescribed collective actions, which, like class actions, provide a

mechanism for challenging conduct that allegedly affects many people.[7]  *See Swales*, 985 F.3d at

435 (citing *Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1049 (7th Cir. 2020)) ("efficiency" is one

of the "dual goals of collective actions").

The FLSA's collective action procedures operate as a special joinder mechanism.  *See*

*Hoffmann-La Roche*, 493 U.S. at 168 (describing opt-in procedure as "fulfilling the statutory

requirement of *joinder* by 'consent in writing'" (emphasis added));[8] Moss & Ruan, *supra* at 542–

---

[7] The Court is careful not to overstate the similarities between class actions and collective actions, for there are critical differences.  *See, e.g.*, *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013) (describing difference between Rule 23 class certification and "conditional certification" under the FLSA); *Swales*, 985 F.3d at 437, 439–43 (rejecting, among other things, a Federal Rule of Civil Procedure 23-like approach for determining whether employees are "similarly situated" under the FLSA); *id.* at 433 (noting stark differences between class actions and collective actions).  For example, Rule 23(b)(3) class actions allow named plaintiffs to vindicate rights of the class without any participation from class members, while collective actions require people to consent to join in the collective if they wish to vindicate their rights.  *See Swales*, 985 F.3d at 435; *Halle v. W. Penn Allegheny Health Sys. Inc.*, 842 F.3d 215, 225 (3d Cir. 2016) ("[The FLSA's] 'opt-in' requirement . . . is the most conspicuous difference between the FLSA collective action device and a class action under Rule 23.").

Congress has also limited the types of claims plaintiffs can pursue through a collective action.  For example, collective actions under section 216(b) are limited to employees' claims asserting FLSA violations.  29 U.S.C. § 216(b) (permitting collective actions for alleged violations of 29 U.S.C. §§ 206, 207, 215(a)(3), and 203(m)(2)(B)).  As another example, plaintiffs may enforce the Age Discrimination and Employment Act ("ADEA") through a collective action.  29 U.S.C. § 626(b) (incorporating 29 U.S.C. § 216 by reference).

[8] *Hoffmann-La Roche Inc.*, 493 U.S. at 170 ("Section 216(b)'s affirmative permission for employees to proceed on behalf of those similarly situated must grant the court the requisite procedural authority to manage the process of *joining* multiple parties in a manner that is orderly, sensible, and not otherwise contrary to the statutory commands or the provisions of the Federal Rules of Civil Procedure." (emphasis added)); *see also id.* at 171 (describing courts' responsibility to manage "*joinder* of additional parties" (emphasis added)); *id.* at 173 (same); *see also Symczyk*, 569 U.S. at 70 n.1 ("While we do not express an opinion on the propriety of [the] use of class-action nomenclature [in collective actions], we do

44 (describing collective actions as "liberalized joinder"); *cf. Halle*, 842 F.3d at 225 n.9 ("[O]pt-in plaintiffs are held to a less stringent standard than [joinder] under Rule 20."). For an employee to join the collective, they must file written consent with the court. 29 U.S.C. § 216(b). But as already discussed, an employee can't properly join the collective (or file effective written consent) unless they are "similarly situated" to the named plaintiffs. *Supra* Section I; *see also* 29 U.S.C. § 216(b); *Swales*, 985 F.3d at 434; *Mickles v. Country Club Inc.*, 887 F.3d 1270, 1278 (11th Cir. 2018). So courts must determine whether any employees are similarly situated before potential opt-in plaintiffs can become party plaintiffs.

Allowing Plaintiffs to add nearly 150 named plaintiffs (who are themselves potential opt-in plaintiffs), whether under Rule 15(a)(2), or under Rule 20, would bypass the collective action joinder mechanism. The FLSA's similarly situated requirement does not wholly overlap with the requirements of either Rule 15(a)(2) or Rule 20. *Cf. Grayson v. K Mart Corp.*, 79 F.3d 1086, 1095 (11th Cir. 1996) ("[W]e hold that the 'similarly situated' requirement of § 216(b) is more elastic and less stringent than the requirements found in Rule 20."); *Prescott v. Prudential Ins. Co.*, 729 F. Supp. 2d 357, 370 (D. Me. 2010) (stating that if a court decertifies a collective action, the plaintiffs "may pursue their claims individually or seek to rejoin th[e] suit under Rule 20"). The similar aims and lack of neat overlap between the FLSA joinder procedures and the Federal Rules creates a conflict over which should apply. The Court must resolve this conflict in favor of the FLSA's more specific requirements governing joinder in a collective action. *See Nitro-Lift Techs., LLC v. Howard*, 568 U.S. 17, 23 (2012) (per curiam) (noting that it is an "ancient interpretive principle that the specific governs the general . . . between laws of equivalent dignity"); *cf. Thorp v. Petrola*, 81 F.R.D. 513, 515 (N.D. W. Va. 1979) (holding that

---

note that there are significant differences between certification under Federal Rule of Civil Procedure 23 and the *joinder process* under § 216(b)." (emphasis added)).

the specific joinder rules (Rules 19, 20, and 21) control over the more general Rule 15); *Peguese v. PNC Bank, N.A.*, 306 F.R.D. 540, 545–46 (E.D. Mich. 2015).

Moreover, *Swales* demands that district courts decide whether any employees are similarly situated *before* the court facilitates sending an opt-in notice to potential plaintiffs. *Swales*, 985 F.3d at 442–43.  This order of operations suggests that courts should decide the similarly situated question *before* allowing plaintiffs to opt in.  *See id.* (describing potential employment differences among named plaintiffs and plaintiffs that opted in before the court sent a notice, and suggesting that those plaintiffs may not be similarly situated).  Separation of the named plaintiffs and potential opt-in plaintiffs at the outset of a potential collective action thus tracks the FLSA's joinder procedures.  And adding nearly 150 people as new named plaintiffs could throw the case's status as a potential collective action into question.  *See Allen*, 724 F.2d at 1135 (concluding that FLSA collective action procedures are inapplicable when "each claimant is a named plaintiff" and thus the whole lawsuit "consists of a number of individual actions, not a collective or class action").

The FLSA joinder mechanism also promotes efficient litigation management.  As compared to tens or hundreds (or even thousands) of independently named plaintiffs, a small group of named plaintiffs allows parties and courts to test the merits of a collective action in an orderly manner.  *Cf. Johnston v. Coleman Music & Ent., LLC*, 3:12-cv-448-J-99TJC-TEM, 2013 WL 12159256, at *4 (M.D. Fla. Apr. 8, 2013) ("[A] requirement that the complaint be amended to add opt-in plaintiffs as named plaintiffs would be contrary to the purpose of § 216(b) and would unduly burden FLSA plaintiffs and district courts hearing their claims."); *Altnor v. Preferred Freezer Servs., Inc.*, 197 F. Supp. 3d 746, 756 (E.D. Pa. 2016) ( "[I]t would be impracticable to join eighty-one individual plaintiffs in a single suit.").  Another court provided a

cogent example of why fewer named plaintiffs in potential collective actions promotes efficient litigation management:

> The distinction between "named plaintiffs" and "opt-in" plaintiffs is crucial [] because only "named plaintiffs" have a duty to plead plausible claims. Obviously, the opt-in plaintiffs have no burden to state a claim for relief in the complaint because opt-in plaintiffs are not named in the complaint.

*Rosario v. First Student Mgmt. LLC*, 247 F. Supp. 3d 560, 566 (E.D. Pa. 2017).

This case is itself an example. If the Court were to analyze whether it should grant Plaintiffs leave to add the nearly 150 named plaintiffs under Rule 15(a)(2), the Court would have to evaluate whether each of those plaintiffs' claims are futile. *Jones*, 427 F.3d at 994; *see also* GPS Resp. at 11–16 (arguing Plaintiffs' proposed amendment would be futile); Asset Resp. at 14–18 (same). The practical effect of this may be abandonment of the collective action because the Court would separately consider over 150 claims. Similarly, Rule 20 would have the Court examine whether the 150 individuals' claims "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences" as the named plaintiffs. FED. R. CIV. P. 20(a)(1). This may require the Court to work outside the *Swales* framework and ask about the similarities between the named plaintiffs and the employees Plaintiffs want to add to the suit. In other words, the Rule 20 analysis conflicts with the command that courts determine the universe of similarly situated employees (or potential opt-in plaintiffs) and do so after allowing preliminary discovery. *See Swales*, 985 F.3d at 436–37, 441–43 (rejecting conditional certification procedure where courts would decide whether employees were similarly situated "on the pleadings and affidavits of the parties" in favor of allowing "preliminary discovery" to determine which employees are similarly situated (quotation omitted)). Thus, applying Rule 15(a)(2) and Rule 20 in this particular context would create inefficiencies that FLSA's joinder procedures try to simplify.

At least one other court has also concluded that plaintiffs must adhere to the FLSA and *Swales*. The plaintiffs in *Bennett v. McDermott International, Inc.*, moving under Rule 20, sought to join 1,305 opt-in plaintiffs as named plaintiffs in a potential collective action under the FLSA. No. 2:19-CV-00158, 2021 WL 4434204, at *4 (W.D. La. Sept. 27, 2021). The court held that "joinder of the opt-in plaintiffs is a blatant attempt to plead around traditional FLSA collective action procedures." *Id.* (calling addition of party plaintiffs "a *de facto* collective action"). The court thus denied Rule 20 joinder and permitted defendants "to test plaintiffs' collective allegations" through the *Swales* process. *Id.* This Court reaches a similar result.

Where Plaintiffs bring a potential collective action, Rule 15(a)(2) and Rule 20 generally give way to the joinder mechanism rooted in the FLSA.[9] The Court thus **DENIES** Plaintiffs' Motion to add 149 named plaintiffs to this potential collective action.[10]

---

[9] There's at least one key caveat to the general rule that courts should follow the FLSA and *Swales* when joining plaintiffs in a collective action: Courts may need to let plaintiffs add or join a small group of additional named plaintiffs if doing so would facilitate efficient and effective preliminary discovery.

Recall that *Swales* requires courts to determine whether any employees are similarly situated to the named plaintiffs from the outset of the case. *See* 985 F.3d at 434 ("[A] district court must rigorously scrutinize the realm of 'similarly situated' workers, and must do so from the outset of the case."); *id.* at 442 (noting a district court must "consider all of the available evidence" to determine eligible opt-in plaintiffs). A court could conceivably determine that additional named plaintiffs would permit more effective and efficient discovery during this first phase of the collective action because, for example, some employees may have custody, possession, or control over relevant documents that others do not have.

Given the district courts' discretion over managing the opt-in process, *see, e.g.*, *JPMorgan Chase*, 916 F.3d at 500–01; *Swales*, 985 F.3d at 435–36, a court can add or join additional named plaintiffs if doing so would help the court determine whether any employees are similarly situated to the named plaintiffs. Indeed, cases from around the Country suggest adding *some* party plaintiffs may be appropriate. *See, e.g.*, *Sullivan-Blake v. FedEx Ground Package Sys., Inc.*, 2:18-cv-01698-RJC, 2021 WL 3563389, at *8–9 (W.D. Pa. Aug. 12, 2021) (collecting cases). Readers should not interpret this opinion to foreclose the possibility that adding or joining some named plaintiffs may be warranted.

[10] Defendants argue that Plaintiffs fail to show that the persons they seek to add by their Motion are "similarly situated" under the FLSA and *Swales*. Asset Resp. at 3–12; GPS Resp. at 4–10. The Court declines to address this argument because it is premature.

- 12 -

### B.  Equitable Tolling of the Statute of Limitations

Although the Court denies Plaintiffs' Motion, it recognizes that the individuals Plaintiffs want to add as named plaintiffs have diligently pursued their claims.  In fact, it appears that the core (and maybe only) reason Plaintiffs seek leave to add named plaintiffs is to toll the statute of limitations for these otherwise potential opt-in plaintiffs.  Reply at 4 ("This amendment is necessary to stop the statute of limitations because each Plaintiff is entitled to their pending claims and compensation under the FLSA."); *id.* ("If the additional plaintiffs are denied from being added to this lawsuit, then 150 individual lawsuits will need to be filed immediately to preserve their claims.").  As already discussed, though, the problem Plaintiffs have is that adding that many named plaintiffs would effectively evade the collective action joinder mechanism.  *See supra* Section II.A.

So the Court looks at an alternative way to toll the statute of limitations.  Invoking its equity powers, the Court will consider whether it should equitably toll the statute of limitations for the persons Plaintiffs seek to add as named plaintiffs.[11]  *See Lee v. Columbia/HCA of New Orleans, Inc.*, 611 F. App'x 810, 812 (5th Cir. 2015) (per curiam) (unpublished) (reviewing district court's decision on equitable tolling even though the plaintiff "did not ask the district court to toll the limitations period" but "the [district] court considered the possibility" anyway);

---

[11] Plaintiffs raised the prospect of equitable tolling in their reply brief.   Reply at 5, 5 n.11.  When a party raises arguments for the first time in their reply, a court "*can* decline to consider" the argument. *Parsons v. Sager*, 1:18-CV-1014-RP, 2019 WL 5243190, at *2 n.2 (W.D. Tex. Apr. 30, 2019) (emphasis added) (quoting *Weber v. Merrill Lynch*, 455 F. Supp. 2d 545, 555 (N.D. Tex. 2006)).  The Court will not so decline here.  First, Defendants recognize in their responses the central role the statute of limitations plays for the nearly 150 people Plaintiffs want to add.  *See* Asset Resp. at 16–17 (noting that claims for some of the nearly 150 people may be time barred); GPS Resp. at 13–15 (similar).  Second, because tolling is an equitable matter, the Court opts to address it.  *See Holland v. Florida*, 560 U.S. 631, 649–50 (2010) (describing that courts of equity, while bound by precedent, operate with more "flexibility" to as to avoid overly rigid application of rules that would result in "hardships" "if strictly applied").

*cf. Holland v. Florida*, 560 U.S. 631, 649–51 (2010) (describing courts' "equity powers" and "long history of judicial application of equitable tolling").

### 1.   *The Statute of Limitations under the FLSA*

The FLSA imposes the relevant statute of limitations.  29 U.S.C. § 255.  For non-willful violations, the statute of limitations expires two years after the plaintiff's cause of action accrues; for willful violations, it's three years.  *Id.* § 255(a).  Whether a defendant's alleged violation is willful or not, the statute of limitations tolls the day a plaintiff commences an action.  *Id.* § 255(d).

The Portal-to-Portal Act of 1947 defines when an action is commenced under the FLSA. *Id.* § 256.  There are two possibilities: one for named plaintiffs and another for opt-in plaintiffs. *Id.*  For named plaintiffs, an FLSA action commences on the day the plaintiff(s) file a complaint.[12]  *Id.* § 256(a).  For opt-in plaintiffs, an FLSA action commences on the day the opt-in plaintiff(s) file written consent to opt in—that is, the day they opt into the collective.  *Id.* § 256(b); *see also Sandoz*, 553 F.3d at 916–17.

### 2.   *Availability of Equitable Tolling*

"[T]ime bars in suits between private parties are presumptively subject to equitable tolling."  *United States v. Wong*, 575 U.S. 402, 407 (2015) (citing *Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89, 95 (1990)).  To rebut that presumption, a party must show "that Congress opted to forbid equitable tolling."  *Id.* at 408.  It does not appear that Congress did so here.  The Fifth Circuit has suggested that the FLSA's statute of limitations are subject to equitable tolling, *see Sandoz v. Cingular Wireless, LLC*, 700 F. App'x 317, 319–21 (5th Cir. 2017) (per curiam)

---

[12] The Portal-to-Portal Act also applies this subsection to opt-in plaintiffs who were not "specifically named as a party plaintiff in the complaint" but filed "written consent to become a party plaintiff . . . *on [the] date" the party plaintiff(s) filed a complaint.*  29 U.S.C. § 256(a) (emphasis added).

(unpublished) (reaching merits of equitable tolling issue), as have many district courts, *e.g.*, *Sehr v. Val Verde Hosp. Corp.*, 368 F. Supp. 3d 1106, 1108–10 (W.D. Tex. 2019) (tolling statute of limitations for putative plaintiffs during pendency of motion for conditional certification); *Kutzback v. LMS Intellibound, LLC*, 233 F. Supp. 3d 623, 628–32 (W.D. Tenn. 2017) (same); *Contrera v. Langer*, 278 F. Supp. 3d 702, 723–26 (S.D.N.Y. 2017) (reaching merits of equitable tolling issue); *Stransky v. HealthONE of Denver, Inc.*, 868 F. Supp. 2d 1178, 1180–82 (D. Colo. 2012) (tolling statute of limitations for potential opt-in plaintiffs who had not yet received notice of the action).  This Court declines to depart from this weight of persuasive authority.[13]  The FLSA's statute of limitations are subject to equitable tolling.

### 3.   *Standard for Equitable Tolling*

"The doctrine of equitable tolling preserves a plaintiff's claims when strict application of the statute of limitations would be inequitable."  *United States v. Patterson*, 211 F.3d 927, 930 (5th Cir. 2000) (quoting *Davis v. Johnson*, 158 F.3d 806, 810 (5th Cir. 1998)) (habeas context); *see also Rx.com v. Medco Health Sols., Inc.*, 322 F. App'x 394, 398 (5th Cir. 2009) (unpublished) (stating same in broader civil context).  But courts do not reflexively apply equitable tolling.  They instead apply the doctrine "sparingly" and only in "rare and exceptional circumstances."  *E.g.*, *Granger v. Aaron's, Inc.*, 636 F.3d 708, 712 (5th Cir. 2011) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002)); *Teemac v. Henderson*, 298 F.3d 452, 457 (5th Cir. 2002) (quotation omitted).  While courts must exercise caution before

---

[13] At least one practical reason supports the availability of equitable tolling of the FLSA's statute of limitations.  When plaintiffs have already identified potential opt-in plaintiffs, equitably tolling the statute of limitations does not run counter the FLSA's provisions because the already-identified opt-in plaintiffs could simply turn around and file a lawsuit, which would then toll the statute of limitations.  *See* 29 U.S.C. § 255; *cf. Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 559 (1974) (filing of ultimately defective class action tolled statute of limitations for individual plaintiffs "during the pendency of the motion to strip the suit of its class action character").

equitably tolling a statute of limitations, courts ought not "apply the statute of limitations too harshly." *Patterson*, 211 F.3d at 931 (quoting *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999)).  In the end, whether to equitably toll a statute of limitations is a fact-intensive inquiry. *Id.* ("To apply the doctrine of equitable tolling, we look to the facts and circumstances of each case."); *Granger*, 636 F.3d at 713 ("The district court did not abuse its discretion in concluding that *the facts* warranted equitable tolling." (emphasis added)).

The Fifth Circuit has found equitable tolling appropriate where:

(1) a plaintiff files a claim but does so in the wrong forum;

(2) a defendant "intentional[ly] conceal[s]" facts giving rise to a claim, causing the plaintiff to be unaware of the pertinent facts; and

(3) a government agency, such as the Equal Employment Opportunity Commission ("EEOC"), "mislead[s] the plaintiff about the nature of her rights."

*Melgar v. T.B. Butler Publ'g Co.*, 931 F.3d 375, 380 (5th Cir. 2019) (quoting *Teemac*, 298 F.3d at 457).  None of those bases for equitable tolling appears to apply here.  This list, however, is non-exhaustive.  *Id.* at 381 ("[W]e have opined that there may be other bases that warrant equitable tolling."); *Granger*, 636 F.3d at 712 (stating that the Fifth Circuit has "le[ft] the door open to recogniz[ing] other" bases for equitable tolling).

Indeed, the Supreme Court has provided a broader test for equitable tolling: A litigant must establish "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing."  *Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 255 (2016) (quoting *Holland*, 560 U.S. at 649).[14]

---

[14] *See also Irwin*, 498 U.S. at 96 ("We have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period . . . ."); *Granger*, 636 F.3d at 712–13 ("We are more forgiving [] when a claimant or her attorney has exercised due diligence in pursuing her rights.")

On the first element, a litigant need only show that they have pursued their "rights with reasonable diligence, not maximum feasible diligence." *Flores-Moreno v. Barr*, 971 F.3d 541, 545 (5th Cir. 2020).  Relevant to whether a litigant has diligently pursued their rights is "whether 'the plaintiff took some step recognized as important by the statute before the end of the limitations period.'" *Granger*, 636 F.3d at 712 (quoting *Perez v. United States*, 167 F.3d 913, 918 (5th Cir. 1999)).  On the second element, a litigant must "establish that an extraordinary circumstance beyond his control prevented him from complying with the deadline." *Moreno*, 971 F.3d at 545.

### 4. *The Statute of Limitations Is Equitably Tolled for the Already-Identified Potential Opt-In Plaintiffs*

#### a. **Reasonable diligence**

The individuals Plaintiffs want to add as named plaintiffs have diligently pursued their rights.  Unlike in *Sandoz*, where the Fifth Circuit affirmed that equitable tolling is inapplicable when plaintiffs "fail[ed] to conduct any diligence," 700 F. App'x at 321, here the potential opt-in plaintiffs are actively pursuing their rights by seeking to join this lawsuit.  By attempting to be added as named plaintiffs, these individuals are essentially attempting to opt into the lawsuit—which is a "step recognized as important by the statute before the end of the limitations period."

---

In *Menominee Indian Tribe*, the Supreme Court said that it assumed without deciding that its equitable tolling test articulated in *Holland*, a habeas case, "applies outside the habeas context."  577 U.S. at 255–57, 257 n.2.  This statement leads to some confusion about the test's applicability, considering the Supreme Court invoked the *Holland* test in at least two pre-*Menominee* non-habeas cases.  *Lozano v. Montoya Alvarez*, 572 U.S. 1, 10 (2014) (asking whether equitable tolling applied to a treaty); *Wong*, 575 U.S. at 408 (invoking test in Federal Tort Claims Act case).  And despite referring to the *Holland* test (from 2010), the test can be traced to at least *Pace v. DiGuglielmo* (from 2005).  544 U.S. 408, 418 (2005).  The status of the *Holland* (or *Pace*) test is, however, outside this Court's purview.  Because the Fifth Circuit appears to have adopted the *Holland* test in non-habeas cases, this Court will also apply the *Holland* test.  *See, e.g.*, *Sandoz*, 700 F. App'x at 320; *Ovalles v. Rosen*, 984 F.3d 1120, 1123 (5th Cir. 2021) (immigration context); *Vazquez v. DEA*, 823 F.3d 280, 282 (5th Cir. 2016) (forfeiture context).

*Granger*, 636 F.3d at 712 (quotation omitted); *see also* 29 U.S.C. §§ 255(a) & (d), 256 (statute of limitations tolls on the day opt-in plaintiffs file written consent to join collective action).

Though this Court has found no case addressing due diligence and equitable tolling in a similar posture, other courts have equitably tolled the statute of limitations for potential opt-in plaintiffs.  For example, in *Sehr*, the court equitably tolled the statute of limitations for potential opt-in plaintiffs when the named plaintiff had "been diligent in pursuing his request" for conditional certification of the collective action.  368 F. Supp. 3d at 1109–10.  The court in *Schindler v. Alarm Security Group, LLC* reached a similar conclusion: Equitable tolling is warranted when the parties collectively agreed to conditional certification and the contents of the notice, "combined with [the plaintiff's] undisputed diligence in pursuing his relief."  919 F. Supp. 2d 827, 830–31 (W.D. Tex. 2018).  These courts determined that a plaintiff's diligent pursuit of conditional certification—which, pre-*Swales*, was a step necessary before a district court facilitated sending an opt-in notice—warranted equitable tolling of the potential opt-in plaintiffs' claims.

The potential opt-in plaintiffs in this case have an even stronger claim to due diligence than those in *Sehr* and *Schindler*.  Plaintiffs have already identified the nearly 150 individuals as potential opt-in plaintiffs, Mot. ¶ 2, while the potential opt-in plaintiffs in *Sehr* and *Schindler* had not yet been identified, *Sehr*, 368 F. Supp. 3d at 1109; *Schindler*, 919 F. Supp. 2d at 830–31.  Given this, the Court easily concludes that the potential opt-in plaintiffs have "exercise[d] due diligence," *Irwin*, 498 U.S. at 96, in "discovering their claims," *Sandoz*, 700 F. App'x at 321.[15]

---

[15] Many courts have held that the statute of limitations cannot be equitably tolled where plaintiffs *fail* to pursue their rights.  *See, e.g.*, *Prada v. Banco Indus. De Venez., C.A.*, 753 F.3d 62, 71 (2d Cir. 2014) ("[Plaintiff] does not merit equitable tolling . . . because she could have filed her FLSA claim."); *Chao v. Va. Dep't of Transp.*, 291 F.3d 276, 283–84 (4th Cir. 2002) (similar); *Ferguson v. Tex. Farm Bureau*, 307 F. Supp. 3d 577 (W.D. Tex. 2018) (noting plaintiffs failed to show that "potential opt-in plaintiffs have been unable to discover essential information regarding the existence of their own

The potential opt-in plaintiffs have been reasonably diligent in pursuing their claims from at least the day Plaintiffs moved to add them as named plaintiffs.  *Cf., e.g.*, *Schindler*, 919 F. Supp. 2d at 831 (tolling statute of limitations from the day the parties agreed on conditional certification and an opt-in notice).

### b. Extraordinary circumstance

The nature and posture of this case constitutes an extraordinary circumstance interfering with the nearly 150 individuals' potential claims.  Specifically, delays in the Court deciding the present Motion and delays inherent in the *Swales* process create the extraordinary circumstance.  The present Motion has been ripe for about four months.  Because four months constitutes a significant portion of the two-year statute of limitations period, it's conceivable that some claims that may have been timely when Plaintiffs filed their Motion are now time barred.  As other courts have found, court-caused delay, although admittedly part of litigation, constitutes an extraordinary circumstance for the purposes of equitable tolling.  *E.g.*, *Sehr*, 368 F. Supp. 3d at 1109 (tolling statute of limitations for period between motion for conditional certification and the court's decision on that motion); *Pfefferkorn v. PrimeSource Health Grp., LLC*, No. 17-cv-1223, 2019 WL 354968, at *8 (N.D. Ill. Jan. 29, 2019) (tolling statute of limitations for potential opt-in plaintiffs when court denied first motion for conditional certification as premature and then took

---

claims"); *Escobedo v. Dynasty Insulation, Inc.*, 694 F. Supp. 2d 638, 653–54 (W.D. Tex. 2010) (denying equitable tolling because opt-in plaintiffs "knew that they were entitled to overtime compensation but failed to diligently pursue the rights").  Though these cases reached conclusions different from the one this Court reaches, the reasoning the courts applied in these cases support the proposition that a person's exercise of due diligence in pursuing their claim supports equitably tolling a statute of limitations.  Here, the potential opt-in plaintiffs have done the opposite of the plaintiffs in these cases: They have diligently pursued their rights.

nearly one year to decide a motion to dismiss and subsequent motion for conditional certification).[16]

The Court recognizes that there is a split among district courts on the issue how courts should handle court-caused delay.  Other courts have held that court-caused delays do not constitute extraordinary circumstances.  *E.g.*, *Mendoza v. AFO Boss, LLC*, 402 F. Supp. 3d 355, 360 (W.D. Tex. 2019) (rejecting that a six-month delay in the court deciding a motion for conditional certification is an extraordinary circumstance); *Calloway v. AT&T Corp.*, 419 F. Supp. 3d 1031, 1035 (N.D. Ill. 2019) (denying equitable tolling for potential opt-in plaintiffs during pendency of motion to dismiss that delayed plaintiffs' motion for conditional certification).  These courts reason that if "the predictable and common consequence of crowded court dockets" warranted equitable tolling for potential opt-in plaintiffs, then the extraordinary remedy of equitable tolling would be transformed "into a routine,  automatic one." *Calloway*, 419 F. Supp. 3d at 1035 (quotation omitted).

In the circumstances of this case, this Court disagrees.  In *Mendoza* and *Calloway*, movants sought to equitably toll the statute of limitations for yet-to-be-identified opt-in plaintiffs.  *Mendoza*, 402 F. Supp. 3d at 360; *Calloway*, 419 F. Supp. 3d at 1035.  Here, however, Plaintiffs have already identified at least some potential opt-in plaintiffs.  Mot. ¶ 2.  That Plaintiffs have already identified potential opt-in plaintiffs who, by decision of this Court, cannot otherwise be added as named plaintiffs creates an extraordinary circumstance preventing these

---

[16] *See also Kutzback*, 233 F. Supp. 3d at 631 (delay in conditional certification is extraordinary circumstance); *Schindler*, 919 F. Supp. 2d at 830–31 (equitably tolling statute of limitations where delay caused by the court's need "to ascertain the parties properly before it"); *Yahraes v. Rest. Assocs. Events Corp.*, No. 10-CV-935 (SLT), 2011 WL 844963, at *2 (E.D.N.Y. Mar. 8, 2011) ("The delay caused by the time required for a court to rule on a motion, such as one for certification of a collective action in a FLSA case, may be deemed an 'extraordinary circumstance' justifying application of the equitable tolling doctrine." (cleaned up)) (collecting cases).

potential opt-in plaintiffs from tolling their statute of limitations. While this somewhat collapses the due diligence and extraordinary circumstances prongs, the Court finds it relevant that Plaintiffs have already identified potential opt-in plaintiffs who are seeking to toll their statute of limitations. *See Yahraes*, 2011 WL 844963, at \*2–3 ("[The] procedural history demonstrates that plaintiffs have vigorously pursued their claims and, through no fault of their own, have been delayed in prosecuting their action and distributing 216(b) notice to potential opt-in plaintiffs.")

More importantly, equitable tolling takes on increased significance in the post-*Swales* universe. In other cases this Court has cited, party plaintiffs moved quickly for conditional certification, which in turn would have allowed opt-in plaintiffs to file written consent early on in the pendency of the action, thereby tolling the statute of limitations. This case is unlike those cases. Plaintiffs cannot necessarily move with the same haste. *Swales* requires district courts to abandon the conditional certification process and instead determine at the outset of litigation which, if any, employees are "similarly situated." 985 F.3d at 442–43. The time it takes to determine whether any employees are similarly situated will vary case to case, but the *Swales* court recognized that it may require significant time and discovery. *See id.* at 441–42 ("In other cases, . . . the district court will necessarily need more discovery to determine whether notice is going out to those 'similarly situated.' "). It would be inequitable to require already-identified potential opt-in plaintiffs, as there are in this case, to sit and wait for the *Swales* process to play out before potentially receiving a notice that they are "similarly situated" to Plaintiffs and therefore have a right to join the lawsuit and thereby toll the statute of limitations.

Moreover, if the Court did not equitably toll the statute of limitations, the already-identified potential opt-in plaintiffs would very likely file separate lawsuits. *See* Reply at 4 ("If the additional plaintiffs are denied from being added to this lawsuit, then 150 individual lawsuits

will need to be filed immediately to preserve their claims.").  It is likely that those separate lawsuits would then be consolidated with this one because the potential opt-in plaintiffs raise the same claims as Plaintiffs.  *See* 1st Am. Compl., ECF No. 24-1; *see also* FED. R. CIV. P. 42(a) (permitting consolidation of actions that "involve common questions of law or fact").  This, like allowing Plaintiffs to amend their complaint to add the potential opt-in plaintiffs as named plaintiffs, would effectively bypass *Swales* and undercut goals served by the collective action. *See Hoffmann-La Roche*, 493 U.S. at 170 (noting plaintiffs benefit from collective actions by "pooling resources" "to vindicate rights" and "[t]he judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged [] activity"); *cf. supra* Section II.A.

Whether or not the potential opt-in plaintiffs file separate lawsuits, the normal course of litigation could cause delays that inequitably frustrates their rights.  For example, defendants could move to dismiss or compel arbitration.  *See Penley v. NPC Int'l, Inc.*, 206 F. Supp. 3d 1341, 1347–51 (E.D. Tenn. 2016) (tolling statute of limitations in FLSA case and recognizing that "[p]rocedural events can delay notice to and joinder of opt-in [p]laintiffs").  Other delay-inducing disputes could abound: disputes over the scope of precertification discovery, subsequent discovery disputes, disputes over the form of the notice, and so on.  Every preliminary dispute could result in rights lost.  Indeed, "[w]ithout the possibility of equitable tolling, the value of the FLSA collective actions would routinely be diminished to the point of being unfeasible—as the potential recovery for the plaintiff class continuously lessens as cases are delayed."  *Id.* at 1348; *see also Davis v. Flare Ignitors & Rentals, Inc.*, No. 5:11-CV-450-OLG, 2012 WL 12539328 (W.D. Tex. Mar. 19, 2012) (tolling during pendency of certification motion because any delay would be caused by the court).

### c. Equitable tolling is warranted

In sum, the potential opt-in plaintiffs have exercised due diligence in pursuing their rights and extraordinary circumstances stand in their way of timely filing to vindicate their rights. Moreover, in the world of *Swales*, denying Plaintiffs leave to amend, and doing nothing more, would result in inequity for the potential opt-in plaintiffs because, through no fault of their own, time will pass that puts their rights in jeopardy. Equity demands that the Court toll the statute of limitations for the potential opt-in plaintiffs named in Plaintiffs' Motion.[17]

## III.    CONCLUSION

The Court **DENIES** Plaintiffs' "Motion for Leave to File Plaintiff's Amended Complaint" (ECF No. 24) but **EQUITABLY TOLLS** the statute of limitations for those persons Plaintiffs identify in their Motion as potential opt-in plaintiffs. Their statute of limitations is tolled from the day Plaintiffs filed their Motion (May 13, 2022) to the day the Court decides whether this case can properly proceed as a collective action.

The Court further **ORDERS** that the parties **MEET AND CONFER** to draft an agreed upon proposed scheduling order for the first phase of this potential collective. The parties **SHALL FILE** a **JOINT PROPOSED SCHEDULING ORDER** by **November 10, 2022**. The parties should make every effort to agree on deadlines, but if disagreement persists after good-faith attempts at negotiation, the parties may note their respective positions in the joint filing.

---

[17] Defendants will not be prejudiced by equitably tolling the statute of limitations from the day Plaintiffs filed their Motion. By filing leave to amend, Plaintiffs put Defendants on notice of the potential opt-in plaintiffs' FLSA claims. *See Hughes v. Region VII Area Agency on Aging*, 542 F.3d 169, 188–89 (6th Cir. 2008) (concluding defendants would not suffer prejudice from equitable tolling of the statute of limitations for a party plaintiff because she included her FLSA claims in her motion for leave to file a second amended complaint); *Kutzback*, 233 F. Supp. 3d at 630–31 ("[C]ourts have held that [a defendant's] awareness [of potential FLSA claims] is sufficient to conclude that they are not prejudiced by equitable tolling.").

**So ORDERED and SIGNED this 20th day of October 2022.**

**DAVID C. GUADERRAMA**
**UNITED STATES DISTRICT JUDGE**