**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **ROBERT GOMEZ, ALVARO RODRIGUEZ, ERIC BORUNDA, and DANIEL PORRAS,** *Individually and on Behalf of All Others Similarly Situated,* | § | |
| ***Plaintiffs*,** | § | |
| **v.** | § | **EP-21-CV-00269-DCG** |
| **GLOBAL PRECISION SYSTEMS, LLC and ASSET PROTECTION AND SECURITY SERVICES, LP,** | § | |
| ***Defendants*.** | § | |

**ORDER ACCEPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION WITH MODIFICATIONS AND PARTLY GRANTING MOTION FOR JUDICIALLY SUPERVISED NOTICE UNDER 29 U.S.C. § 216(b)**

Plaintiffs move to certify the above-captioned case as a collective action under the Fair Labor Standards Act ("FLSA").[1] U.S. Magistrate Judge Robert F. Castañeda issued a Report and Recommendation ("R. & R.") advising the Court to grant Plaintiff's Motion in part and deny it in part.[2] For the following reasons, the Court **ACCEPTS** the R. & R. **WITH MODIFICATIONS** and **GRANTS** the Motion **IN PART**.

## I. BACKGROUND

This is an FLSA case in which Plaintiffs allege that Defendants failed to pay overtime wages. The FLSA provides that covered employees—*i.e.*, those who are subject to federal

[1] *See* Mot., ECF No. 58.

[2] *See* R. & R., ECF No. 63.

minimum wage requirements[3]—who work for more than 40 hours in a workweek must "receive[] compensation for [their] employment . . . at a rate not less than one and one-half times the regular rate at which he is employed."[4] An employer who fails to pay overtime as the FLSA requires is "liable to the employee or employees affected in the amount of their . . . unpaid overtime compensation . . . and in an additional equal amount as liquidated damages."[5]

Defendants Global Precision Systems LLC ("GPS") and Asset Protection and Security Services, LP ("Asset") are contractors at the Immigration and Customs Enforcement ("ICE") Facility located at 8915 Montana Avenue, El Paso, Texas (the "Facility").[6] As ICE contractors, Defendants supply the Facility with detention officers to:

(1) observe, prevent, and report instances of disorder or noncompliance;

(2) respond to emergency situations; and

(3) prevent and detect escape attempts.[7]

Plaintiffs are current or former employees of Defendants, each of whom worked as detention officers at the Facility.[8]

---

[3] *E.g.*, *Evers v. Tart*, 48 F.3d 319, 320 (8th Cir. 1995) ("An individual defined as an 'employee' within the meaning of the Act must be compensated according to the Act's mandatory minimum wage provisions." (citing 29 U.S.C. § 206)).

[4] 29 U.S.C. § 207(a)(1).

[5] *Id.* § 216(b).

[6] *See* Compl., ECF No. 1, at 4.

All page citations in this Order refer to the page numbers assigned by the Court's CM/ECF system, rather than the cited document's internal pagination.

[7] *See id.* at 5–6.

[8] *See id.* at 3–4.

On October 27, 2021, Plaintiffs filed a complaint alleging that Defendants violated the FLSA by failing to properly calculate and pay overtime wages.[9] Specifically, Plaintiffs allege that they and other, similarly situated detention officers were:

(1) hourly, non-exempt workers;

(2) scheduled to work 40 hours per week;

(3) required to work both before and after the official start and end times of their shifts;[10] and

(4) not compensated for time worked before and after their scheduled shifts.[11]

On May 13, 2022, Plaintiffs moved to amend their Complaint to add nearly 150 additional plaintiffs.[12] The Court denied that motion, reasoning that letting Plaintiffs add almost 150 people as additional parties to this case would effectively permit Plaintiffs to sidestep the FLSA's collective action certification procedures.[13] The Court, however, equitably tolled the statute of limitations for those individuals and instructed the parties to jointly propose deadlines under which Plaintiffs could seek collective action certification under the FLSA.[14] The parties jointly submitted a proposed scheduling order,[15] and—on November 14, 2022—the Court set

---

[9] *See generally id.*

[10] *See id.* at 6 (alleging that Defendants required detention officers to "check into work . . . at leas[t] 15–20 minutes prior to the start of the shift" and "stand by after their shift is over for approximately 15–30 minutes").

[11] *See id.*

*See also id.* at 7–8 (alleging that other, similarly situated class members weren't compensated for pre- and post-work time).

[12] *See* Mot. Leave Am., ECF No. 24.

[13] *See Gomez v. Glob. Precision Sys., LLC*, 636 F. Supp. 3d 746, 754–55 (W.D. Tex. 2022).

[14] *See id.* at 759–62.

[15] *See* Joint Mot. Entry Scheduling Order, ECF No. 35.

deadlines for the parties to engage in pre-certification discovery and brief whether collective action certification is appropriate.[16]

Thereafter, the parties completed pre-certification discovery, and Plaintiffs timely moved for collective action certification on July 31, 2023.[17] In addition to asking the Court to certify a collective action, Plaintiffs also asked the Court to:

(1) authorize a proposed notice (the "Proposed Notice");[18]

(2) order Defendants to provide contact information for potential opt-in plaintiffs; and

(3) toll the applicable statute of limitations for potential opt-in plaintiffs from October 27, 2018 through July 31, 2023—the date that Plaintiffs filed the Motion.[19]

As exhibits to the Motion, Plaintiffs attached (among other things) 153 declarations from Plaintiffs and other detention officers who worked for Defendants at the Facility (the "Declarations").[20]

Defendants opposed the Motion, first asking the Court to strike various exhibits that Plaintiffs attached to the Motion (including the Declarations),[21] and then arguing that Plaintiffs aren't entitled to any of the relief they seek.[22]

---

[16] *See* Scheduling Order, ECF No. 36, at 1.

[17] *See generally* Mot.

*See also* Am. Scheduling Order, ECF No. 42, at 1 (imposing July 31, 2023 deadline for Plaintiffs to move for collective action certification).

[18] *See* Proposed Notice, ECF No. 58, at 25–28.

[19] *See* Mot. at 21.

[20] *See* Decls., ECF No. 58, at 29–958.

[21] *See* Joint Opp., ECF No. 59, at 18–27.

[22] *See id.* at 27–43.

After briefing concluded, the Court referred the Motion to Magistrate Judge Robert Castañeda.[23] On August 19, 2024, Judge Castañeda issued an R. & R. in which he:

(1) denied Defendants' request to strike the Declarations and other exhibits;[24] and

(2) recommended that the Court:

(a) grant the Motion in part;[25]

(b) certify a collective action of "(1) former and current detention officers named in Plaintiffs' First Amended Complaint who worked for Defendants from May 13, 2019, to the present, and (2) all other detention officers who worked or currently work for Defendants within the past three years preceding collective action certification";[26]

(c) give Defendants "fourteen (14) days to provide Plaintiffs with the names and addresses of potential opt-in plaintiffs";[27]

(d) revise the Proposed Notice;[28] and

(e) deny Plaintiffs' request for equitable tolling.[29]

---

[23] *See* June 27, 2024 Text Order.

[24] *See* R. & R., ECF No. 63, at 9–10.

As explained below, Defendants' request to strike the Declarations was subject to Judge Castañeda's determination rather than his recommendation. *See infra* notes 52–55 and accompanying text.

[25] *Id.* at 21.

[26] *Id.*

[27] *Id.* at 22.

[28] *See id.*; *see also id.* at 19–20 (proposing revisions to the Proposed Notice).

[29] *Id.*

Defendants timely objected to all but recommendations (2)(c)–(e) listed above.[30]

## II. LEGAL STANDARD

The salient issue for the purposes of this Order is whether Plaintiffs may pursue their FLSA claims collectively—that is, "for and [on] behalf of . . . themselves and other employees ***similarly situated***."[31] Where other employees are "similarly situated," courts may direct notice to those employees to give them an opportunity to opt into the collective action.[32]

Historically, most courts tackled collective action certification by looking to the framework set forth by the District of New Jersey in *Lusardi v. Xerox Corp*.[33] Under *Lusardi*, courts considered three factors when deciding whether employees were similarly situated: "(1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to [the] defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations."[34]

---

[30] *See generally* Joint Objs., ECF No. 65; *see also id.* at 20 (indicating that "Defendants do not object to the proposed language changes to the Notice in the [R. & R.]" or "the proposed method of notice or response time" or "the disclosure requirements recommended by the Magistrate"); *id.* ("Defendants do not object to the Magistrate Judge's recommendation denying Plaintiffs' request for equitable tolling.").

[31] *See id.* (emphasis added).

[32] *E.g.*, *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169–72 (1989); *JPMorgan Chase & Co.*, 916 F.3d 494, 500–01 (5th Cir. 2019).

"This 'opt-in' approach distinguishes FLSA [collective] actions from [class actions] pursued under Federal Rule of Civil Procedure 23's 'opt-out' method." *Fulton v. Bayou Well Servs. LLC*, 208 F. Supp. 3d 798, 800–01 (N.D. Tex. 2016).

[33] *See Swales v. KLLM Transp. Servs., L.L.C.*, 985 F.3d 430, 436 (5th Cir. 2021) (citing *Lusardi v. Xerox Corp*., 118 F.R.D. 351 (D.N.J. 1987)).

[34] *Loy v. Rehab Synergies, L.L.C.*, 71 F.4th 329, 336 (5th Cir. 2023) (citation modified).

As for the certification process, *Lusardi* applied a two-step framework.[35] At step one, courts would make an initial determination on whether "proposed members of a collective [were] similar enough to receive notice of the pending action."[36] "[C]ourts typically base[d] their decisions at the first step 'on the pleadings and affidavits of the parties.'"[37] Step two occurred "at the conclusion of discovery" and after potential plaintiffs had been given an opportunity to opt in.[38] Here, courts would make "a second and final 'determination, utilizing a stricter standard,' about whether the named plaintiffs and opt-ins [were] 'similarly situated' and therefore [could] proceed to trial as a collective."[39]

In 2021, however, the Fifth Circuit considered and rejected *Lusardi*'s two-step approach to collective action certification in a case called *Swales v. KLLM Transport Services, L.L.C.*[40] According to the Fifth Circuit, *Lusardi*'s "lenient, step-one 'conditional certification' [phase]" is not only incompatible with the FLSA's statutory text[41] but also violates the Supreme Court's admonition that courts avoid "stir[ring] up litigation" when facilitating notice to potential plaintiffs.[42] The Fifth Circuit further instructed that "court[s] must [instead] rigorously

---

[35] *See Swales*, 985 F.3d at 436 (citing *Lusardi*, 118 F.R.D. 351).

[36] *Id.* (quoting *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001) (internal quotations omitted)).

[37] *Id.* (quoting *JPMorgan*, 916 F.3d at 501).

[38] *Id.* at 437 (quoting *Thiessen*, 267 F.3d at 1102–03 (internal quotations omitted)).

[39] *Id.* (quoting *Thiessen*, 267 F.3d at 1102–03).

[40] *See generally id.*

[41] *See Swales*, 985 F.3d at 434.

[42] *See id.* (first citing *Hoffmann-La Roche Inc.*, 493 U.S. at 169; and then citing *JPMorgan*, 916 F.3d at 500–02).

scrutinize the realm of 'similarly situated' workers . . . ***from the outset of the case***.'"[43] In practice, that means applying a level of scrutiny akin to *Lusardi*'s second step.[44]

In this Order, the Court will apply the rigorous scrutiny that *Swales* demands to Plaintiffs' request for collective action certification.

## III. DISCUSSION

### A. Standard of Review

The standard by which a district court reviews a magistrate judge's conclusions "ultimately depend[s] on whether the referred matter is properly characterized as dispositive or non-dispositive."[45] "Non-dispositive matters decided by a magistrate judge and appealed to the district court are reviewed for clear error."[46] A magistrate judge's recommendations on dispositive matters, on the other hand, are reviewed: (1) *de novo*, if objected to;[47] or (2) for clear error or abuse of discretion, if not objected to.[48]

"The 'clearly erroneous' standard requires that the court affirm the decision of the magistrate judge unless 'on the entire evidence [the court] is left with a definite and firm

---

[43] *Id.* (emphasis added).

[44] *See, e.g.*, *Loy*, 71 F.4th at 337 (observing "the similarities between *Swales* and *Lusardi*'s second step" and concluding that "courts may still find it useful to consider the *Lusardi* factors to help inform or guide the similarly situated analysis"); *see also infra* Section III.C.2 (applying *Lusardi* factors).

[45] *Farrell v. AT&T Corp.*, No. EP-18-CV-00089-PRM, 2018 WL 11347196, at *4 (W.D. Tex. Nov. 8, 2018) (first citing *Brown v. Bridges*, No. 12-CV-4947-P, 2015 WL 410062, at *2 (N.D. Tex. Jan. 30, 2015); and then citing W.D. TEX. L.R. CV-7(c)).

[46] *DOH Oil Co. v. QEP Res., Inc.*, No. MO:18-CV-152-DC, 2020 WL 7631502, at *2 (W.D. Tex. Mar. 19, 2020).

[47] *E.g.*, *Pizana v. Ulta Beauty Cosms., LLC*, No. CV 1:25-CV-264, 2026 WL 1399928, at *1 (S.D. Tex. May 19, 2026) (citing *Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987)).

[48] *E.g.*, *Young v. Martin Marietta Materials Inc.*, No. 6:22-CV-00272, 2023 WL 36069, at *1 (E.D. Tex. Jan. 4, 2023) (citing *United States v. Wilson*, 864 F.2d 1219, 1221 (5th Cir. 1989)).

conviction that a mistake has been committed.'"[49] "No deference is given to the magistrate judge's [R. & R.] under a *de novo* review."[50]

**B. Defendants' Request to Strike Potential Opt-in Plaintiffs' Declarations**

Defendants first object to Judge Castañeda's denial of their request to strike the Declarations.[51] "District courts in the Fifth Circuit have universally treated [requests] to strike evidence as non-dispositive matters that a magistrate judge may rule on by order as opposed to a report and recommendation."[52] That's true even where the challenged evidence is attached as an exhibit to a "dispositive" motion[53]—*i.e.*, a motion that magistrate judges don't ordinarily have

---

[49] *Treadway v. Otero*, No. 2:19-CV-244, 2020 WL 5960681, at *1 (S.D. Tex. Oct. 8, 2020) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

[50] *See Sims v. Denmark*, No. 1:13-CV-533-KS-MTP, 2014 WL 3573663, at *2 (S.D. Miss. July 21, 2014) (citing *Salve Regina Coll. v. Russell*, 499 U.S. 225, 238 (1991))).

[51] *See* Joint Objs. at 4–10.

[52] *Dulcich, Inc. v. DaPron*, No. 3:23-CV-00405, 2025 WL 976598, at *1 n.1 (S.D. Tex. Apr. 1, 2025) (citing *Morehouse v. Ameriquest Mortg. Co.*, No. 9:05-cv-75, 2005 WL 8160875, at *1 n.1 (E.D. Tex. July 14, 2005)); *see also Treadway*, 2020 WL 5960681, at *1 ("The denial of the motion to strike evidence is a non-dispositive matter within the Magistrate Judge's discretion.").

[53] *See, e.g.*, *BHI Energy I Power Servs., LLC v. KVP Energy Servs., LLC*, No. 3:22-CV-1981-L-BN, 2024 WL 4527093, at *2 (N.D. Tex. Aug. 29, 2024) ("Defendants' Motion to Strike . . . summary judgment evidence is clearly a nondispositive pretrial matter over which magistrate judges have authority to decide." (citing 28 U.S.C. § 636(b)(1)(A))); *Treadway*, 2020 WL 5960681 (similar); *Sparrow v. EK Real Est. Servs. of NY, LLC*, No. 422CV00046SDJCAN, 2023 WL 5166390, at *1 (E.D. Tex. Jan. 20, 2023) (determining that motion to strike declaration attached to motion to compel arbitration was "procedural and non-dispositive" and subject to "ultimate determination" by a magistrate judge).

*See also Berry v. Specialized Loan Servicing, LLC*, No. 2:18-cv-02721, 2020 WL 4698318, at *3 (W.D. Tenn. Aug. 13, 2020) (finding it proper to have magistrate judge rule on motions to strike affidavits attached to motion for summary judgment).

the power to decide themselves.[54] The Court will therefore review Judge Castañeda's determinations on this issue for clear error.[55]

In his R. & R., Judge Castañeda considered three issues that, according to Defendants, rendered the Declarations defective:

(1) the absence of verbiage indicating that the Declarations were made under the penalty of perjury;[56]

(2) purported factual inaccuracies in the Declarations—namely, where the Declarations characterize Defendants as joint employers;[57] and

(3) the Declarations' substantial overlap and lack of specificity.[58]

Judge Castañeda rejected each such argument, determining that:

(1) the Declarations qualified as sworn statements irrespective of whether they specifically stated that they were made "under the penalty of perjury";[59]

(2) the Declarations' purported inaccuracies were simply "factual dispute[s] to be resolved" later on in these proceedings;[60] and

(3) the Declarations' overlap, lack of specificity, and lack of foundation went to the Declarations' weight—not whether a court may consider them in the "similarly situated" analysis.[61]

---

[54] *See* FED. R. CIV. P. 72(b)(1) (providing that magistrate judges must "enter a ***recommended*** disposition" when referred "pretrial matter dispositive of a claim or defense" (emphasis added)).

[55] *See supra* note 49 and accompanying text.

[56] *See* R. & R. at 7.

[57] *See id.* at 8.

[58] *See id.* at 7–8, 8–9.

[59] *See id.* at 7.

[60] *See id.* at 8.

[61] *See id.* at 7–8, 8–9.

Judge Castañeda therefore denied Defendants' request to strike the Declarations and considered them in the "similarly situated" analysis.[62]

Defendants contend that Judge Castañeda erred by applying "the squarely rejected, lenient first step of *Lusardi* for 'conditional certification' instead of the rigorous scrutiny required under *Swales*."[63] According to Defendants, *Swales*'s "higher" standard demands that the Declarations adhere to the "evidentiary standards laid out in Rule 56 for summary judgment motions."[64] Contending that the Declarations don't meet Rule 56's requirements, Defendants argue that Judge Castañeda should have stricken the Declarations.[65]

These arguments assume that *Swales* grafted Rule 56's evidentiary requirements onto the "similarly situated" analysis. It didn't. *Swales* actually instructs that "the district court ***needs to consider all of the available evidence***" when conducting that analysis.[66] And, indeed, Defendants even concede that they "have not cited to case law that holds that evidence at the

[62] *See id.* at 9.

[63] Joint Objs. at 6; *see also id.* at 5 ("[T]he Magistrate Judge's reliance on the Plaintiffs' affidavits is improper under *Swales*."); *id.* at 6 (arguing that Judge Castañeda "improperly relied on the lenient first step of the now rejected *Lusardi* two-step approach").

*See also Lusardi*, 118 F.R.D. 351; *Swales*, 985 F.3d 430.

[64] *See* Joint Objs. at 9.

[65] *See id.* at 9–10; *see also* Joint Opp. at 18–22 (arguing that the Declarations are inadmissible and thus shouldn't be considered).

[66] *Swales*, 985 F.3d at 442 ("To determine . . . whether and to whom notice should be issued in this case, the district court needs to consider all of the available evidence.").

*See also, e.g.*, *Lopez-Gonzales v. Ramos*, No. 2:20-CV-061-Z, 2021 WL 3192171, at *4 n.6 (N.D. Tex. July 28, 2021) (concluding that "[p]laintiffs need not present evidence in a form admissible at trial at the notice stage." (quoting *Lee v. Metrocare Services*, 980 F. Supp. 2d 754, 761 (N.D. Tex. 2013)).

notice stage must comply with Rule 56."[67] Thus, even assuming that Rule 56's requirements apply here, the Court sees no clear error in Judge Castañeda's refusal to strike the Declarations.

Defendants also argue that the Declarations were insufficient to support Judge Castañeda's conclusion that the proposed collective is "similarly situated."[68] Whether the Declarations are sufficient evidence that the proposed collective is "similarly situated," however, has no bearing on whether Judge Castañeda erred in considering the Declarations in the first place.[69]

Simply put, Defendants haven't identified any clear error in Judge Castañeda's evidentiary determinations. Nor can the Court. The Court therefore overrules Defendants' objections to Judge Castañeda's denial of their request to strike the Declarations.[70]

### C. Plaintiffs' Request to Certify a Collective Action

The Court now turns to Judge Castañeda's recommendations that (1) the Court find that the proposed collective is "similarly situated"; and, thus, (2) grant the Motion.[71] "Courts have

---

[67] Joint Objs. at 9.

[68] *See, e.g.*, Joint Objs. at 7 ("[T]he Magistrate Judge, by relying on the minimal evidence provided by Plaintiffs, has in essence rendered the Fifth Circuit's ruling in *Swales* useless."); *id.* at 8 ("Plaintiffs had adequate time to provide more compelling evidence in support of their collective action certification than that which would have been sufficient under the now rejected first step of *Lusardi*, yet failed to do so."); *id.* at 9 ("[I]t is overwhelmingly clear that reliance merely only on declarations without factual support and pleadings at the notice stage is improper under [applicable law]."); *id.* at 10 (asking the Court to "reject Plaintiffs' request for class certification under the FLSA").

[69] *Cf. Mitchell v. Diamond Plastics Corp.*, No. CV 18-00919-BAJ-RLB, 2021 WL 3557648, at *3 n.3 (M.D. La. Aug. 11, 2021) (denying motion in limine because "[a]dmissibility and sufficiency are separate inquiries"); *Gonzalez v. Trevino*, 602 U.S. 653, 666 (2024) (Alito, J., concurring) (opining—in an unrelated context—that "[j]udges should not conflate the question whether certain evidence can be considered . . . with the entirely distinct question of whether the evidence suffices").

[70] *See* Joint Objs. at 4–10.

[71] *See id.* at 10–19; R. & R. at 10–19.

treated a motion to certify a collective under Section 216(b) as a dispositive motion."[72] Because Defendants objected to these recommendations, the Court will review them *de novo*.[73]

**1. Proposed Collective**

Before answering whether the proposed collective is similarly situated, the Court must first determine "what facts and legal considerations will be material to determining whether the proposed group of 'employees' is 'similarly situated.'"[74] That (of course) requires the Court to identify who comprises the proposed collective and what issues are relevant to their claims.[75]

In their Complaint—which remains the operative pleading in this case[76]—Plaintiffs allege that Defendants required detention officers to work "before and after their scheduled hours" at the Facility without compensation.[77] Consequently, Plaintiffs allege that they and their

---

[72] *Sanchez v. 600 N. Akard LLC*, No. 3:23-CV-540-L-BN, 2023 WL 9472842, at *4 (N.D. Tex. Dec. 26, 2023), *report and recommendation adopted as modified*, No. 3:23-CV-540-L-BN, 2024 WL 382057 (N.D. Tex. Jan. 30, 2024) (citing *Francis-Luster v. Kelley L. Firm, P.C.*, No. 3:19-cv-2708-L-BK, 2022 WL 822468 (N.D. Tex. Feb. 10, 2022), *report and recommendation adopted*, 2022 WL 575566 (N.D. Tex. Feb. 25, 2022)).

*See also Roberts v. Baptist Healthcare Sys., LLC*, No. 1:20-CV-92, 2022 WL 4084420, at *1 (E.D. Tex. Sept. 4, 2022) (conducting *de novo* review of R. & R. regarding collective action certification); *Spillers v. La. PHS, L.L.C.*, No. CV 3:21-00762, 2022 WL 1664120, at *1 (W.D. La. May 25, 2022) (same); *Clark v. Cont. Land Staff, LLC*, No. 4:20-CV-2620, 2021 WL 4067259, at *1 (S.D. Tex. Sept. 7, 2021) (same).

[73] *See supra* notes 47 & 50 and accompanying text.

[74] *See T.S. by & through P.O. v. Burke Found.*, 521 F. Supp. 3d 691, 697 (W.D. Tex. 2021) (citing *Swales*, 985 F.3d at 441).

[75] *See Aghatise v. Royal Guards Sol. LLC*, No. 4:24-CV-102, 2025 WL 964226, at *2 (E.D. Tex. Mar. 31, 2025) ("[I]t is up to the district court to define the contours of the term 'similarly situated' as it determines who may be included in a collective action.").

[76] *See generally Gomez*, 636 F. Supp. 746.

[77] *See* Compl. at 6–8.

fellow detention officers "regularly work[ed] in excess of forty hours during a workweek," without overtime pay, and in violation of the FLSA.[78]

In their Motion, however, Plaintiffs raise additional claims that Defendants:

(1) didn't pay detention officers for pre- and post-work time while on "hospital duty";[79]

(2) didn't provide detention officers "mandatory 15-minute paid breaks if required to stay past their regular eight-hour shift";[80] and

(3) excluded full-time detention officers from "health benefits and other benefits."[81]

Observing that the Court previously denied Plaintiffs leave to add these claims in an amended complaint, Judge Castañeda concluded that "these allegations are not before the Court."[82]

The Undersigned agrees with Judge Castañeda's conclusion and will limit the proposed collective (and, thus, its similarly situated analysis) to the factual and legal framework that Plaintiffs pleaded in the Complaint.[83] Under that framework, the Court will evaluate whether detention officers who worked at the Facility are similarly situated for the purposes of an FLSA overtime claim.[84]

---

[78] *See id.*

[79] *See* Mot. at 13.

[80] *Id.*

[81] *Id.* at 13–14.

[82] *See* R. & R. at 14 n.5.

[83] *Cf. Floyd v. Stryker Corp.*, No. 3:22-CV-1131-B, 2024 WL 24341, at *6 (N.D. Tex. Jan. 2, 2024) (narrowing scope of proposed collective).

[84] *See supra* notes 77–78.

**2. Similarly Situated Analysis**

Having answered who and what the proposed collective concerns, the Court now turns to the similarly situated analysis. At bottom, "whether a group of employees is similarly situated" hinges on "whether [their] merits questions can be answered collectively."[85] "If answering the merits questions requires a highly individualized inquiry into each potential opt-in's circumstances, then the employees are likely not similarly situated."[86]

"While *Swales* rejected *Lusardi*'s two-step method of 'conditional certification,'" the Fifth Circuit has instructed that "courts may still find it useful to consider the *Lusardi* factors to help inform or guide the similarly situated analysis."[87] Those factors include:

(a) whether the individual plaintiffs have disparate factual and employment settings;

(b) whether the various defenses available to the defendants appear to be individual to each plaintiff; and

(c) fairness and procedural considerations.[88]

Like Judge Castañeda,[89] the Court will use those factors to guide its analysis here.

---

[85] *Loy*, 71 F.4th at 336 (quoting *Swales*, 985 F.3d at 442 (internal quotations omitted)).

[86] *Id.* (quoting *Swales*, 985 F.3d at 442 (internal quotations omitted)).

[87] *Id.* (citing *Badon v. Berry's Reliable Res., LLC*, No. 2:19-CV-12317, 2021 WL 933033, at *3 (E.D. La. Mar. 11, 2021)).

[88] *See Swales*, 985 F.3d at 437 (quoting *Thiessen*, 267 F.3d at 1103 (citation modified)).

[89] *See* R. & R. at 12–19.

#### a. Factual and Employment Settings

The first *Lusardi* factor considers facts like "the opt-in plaintiffs' job duties, geographic locations, supervision, and salary to determine if the opt-ins are similarly situated."[90] The question here is not "whether Plaintiffs all have the same exact work day," but instead "whether they are all subjected to a common policy, plan, or practice."[91]

Plaintiffs produced evidence that the members of the proposed collective each had similar responsibilities and were subject to the same policies and procedures. For example, Plaintiffs presented declarations from themselves and nearly 150 other detention officers who worked at the Facility indicating that members of the proposed collective:

- had similar job duties related to (1) observing, preventing, and reporting disorder and noncompliance, (2) responding to emergencies, and (3) detecting escape attempts at the Facility;[92]

- were subject to the same policies and procedures per an addendum to Defendants' employee handbook;[93]

- were required to report to their shifts early and stay late without compensation;[94] and

- regularly worked more than 40 hours per week.[95]

---

[90] *See Hampton v. McDermott Int'l, Inc.*, No. 2:19-CV-00200, 2024 WL 1664753, at *4 (W.D. La. Apr. 17, 2024) (quoting *Cortez v. Casa do Brasil, LLC*, 646 F. Supp. 3d 847, 853 (S.D. Tex. 2022)).

[91] *Serrano v. Republic Servs., Inc.*, No. 2:14-CV-77, 2017 WL 2531918, at *19 (S.D. Tex. June 12, 2017).

[92] *See* Gomez Decl., ECF No. 58, at 29; *see also* Decls., ECF No. 58, at 32–958.

[93] *See, e.g.*, Gomez Decl. at 30.

[94] *See, e.g.*, *id.*

[95] *See, e.g.*, *id.*

Plaintiffs also produced:

- the job description for Defendants' detention officers, which describes detention officers' duties;[96]

- the above-referenced addendum to Defendants' employee handbook, which sets forth the personnel policies and procedures for GPS and Asset employees at the Facility;[97] and

- the collective bargaining agreement ("CBA") between Defendants and their detention officers, which lays out policies, procedures, and wage rates for union employees—detention officers included.[98]

Considering these materials, Judge Castañeda concluded that "the potential plaintiffs had the same job duties, worked in the same location, worked similar hours, and were subject to the same supervisory policies and practices."[99] And, for those reasons, Judge Castañeda concluded that the detention officers' factual and employment settings indicate that the officers are similarly situated.[100]

Defendants object to these conclusions for four reasons. ***First***, they argue that "the evidence that Plaintiffs present purporting to show that the putative collective action members are similarly situated contains no factual support."[101] Specifically, Defendants contend that the Declarations don't provide any detail on alleged FLSA violations, identify systemic policies, or contend with differences among employees.[102] According to Defendants, "these 'cookie cutter'

---

[96] *See* Job Description, ECF No. 58, at 1072–73.

[97] *See* Handbook Addendum, ECF No. 58, at 997–1071.

[98] *See* CBA, ECF No. 58, at 1074–1108; *id.* at 1079 (defining the CBA's terms to include "all full-time . . . officers . . . who are employed by [Defendants] at the [Facility]").

[99] *See* R. & R. at 16.

[100] *See id.*

[101] *See* Joint Objs. at 13, 15–16.

[102] *See id.* at 15.

declarations do not provide credible or competent evidence" that the detention officers are similarly situated under *Swales*.[103]

*Swales*, however, instructs that the degree of evidence necessary to support a similarly situated finding varies by case.[104] As the Fifth Circuit explained:

> in a donning and doffing case, [for example, it may be proper to certify a collective action] when the pleadings and only preliminary discovery show sufficient similarity between the plaintiffs' employment situations. In those types of cases, the plaintiffs all have the same job description, and the allegations revolve around the same aspect of that job. So, a district court will not likely need mountains of discovery to decide whether notice is appropriate. In another case . . . where Plaintiffs have demonstrably different work experiences, the district court will necessarily need more discovery to determine whether notice is going out to those "similarly situated."[105]

This case is more akin to the former than the latter. Here, Plaintiffs presented evidence that Defendants' detention officers have the same job description,[106] and their FLSA allegations uniformly revolve around whether Defendants required them to arrive early and stay late without compensation.[107] Although Defendants critique the Declarations' lack of specificity as to the dates, times, and pay rates of any given FLSA violation,[108] Plaintiffs need only provide evidence

---

[103] *Id.* at 16.

[104] *See Swales*, 985 F.3d at 441.

[105] *Id.* at 441–42.

[106] *See* Job Description.

[107] *See generally* Decls.

[108] *See* Joint Objs. at 15.

to establish "some factual nexus which binds them as alleged victims of a particular policy or practice."[109] The Court concludes that Plaintiffs have done so here.

***Second***, Defendants argue that they produced competing declarations that "point out the distinct situation[s] between various employees."[110] Those two declarations—one on behalf of GPS,[111] the other on behalf of Asset[112]—generally highlight the differences in shift schedules and job responsibilities among detention officers,[113] which (according to Defendants) precludes a similarly situated finding.[114]

But even "where there are legitimate differences between putative collective-action members, the first factor does not weigh against a similarly situated finding unless FLSA liability turns on the identified differences."[115] Here, the detention officers' claims don't turn on when they were scheduled to work or what they did during their shifts. Rather, their claims turn on whether Defendants required detention officers to arrive early and stay late, and whether Defendants appropriately compensated detention officers (if at all) for any such time.[116]

---

[109] *Britt v. Miss. Farm Bureau Cas. Ins. Co.*, No. 1:18-CV-38-GHD-DAS, 2022 WL 331210, at *3 (N.D. Miss. Feb. 3, 2022) (quoting *Vanzzini v. Action Meat Distributors, Inc.*, 995 F. Supp. 2d 703, 720 (S.D. Tex. 2014) (internal quotations omitted)).

[110] *See* Joint Objs. at 13; *see also* Joint Opp. at 34–36.

[111] *See* Rivas Decl., ECF No. 59, at 47–51.

[112] *See* Mandel Decl., ECF No. 59, at 53–56.

[113] *See generally* Rivas Decl.; Mandel Decl.; *see also* Joint Opp. at 34–36.

[114] *See* Joint Objs. at 13.

[115] *Hampton*, 2024 WL 1664753, at *6 (quoting *Torres v. Chambers Protective Servs., Inc.*, No. 5:20-CV-212-H, 2021 WL 3419705, at *5 (N.D. Tex. Aug. 5, 2021) (citation modified)).

[116] *See, e.g.*, Compl. at 6–7.

*See also* 29 U.S.C. § 207(a) (prohibiting employers from employing its employees for a workweek longer than forty hours "unless such employee[s] receive[] compensation for [their]

Defendants may well disagree with Plaintiffs' factual and legal positions. This, however, is not the stage to resolve those disagreements.[117]

***Third***, Defendants argue that Judge Castañeda incorrectly grounded his conclusions in the Southern District of Texas's analysis in *Falcon v. Starbucks Corp.*[118] According to Defendants, *Falcon* predated *Swales* and therefore "d[id] not use the more rigorous standard" for collective action certification that *Swales* demands.[119] But while it's true that *Falcon* followed *Lusardi*'s now-defunct two-step approach to collective certification,[120] the order that Judge Castañeda cites addressed the second step of that approach.[121] As the Fifth Circuit explained in *Swales*, *Lusardi*'s second step called for a "stricter standard" than the first, conditional certification step.[122] And, indeed, the court in *Falcon* even observed that "[t]he step two standard is 'less lenient'" than the "'fairly lenient' step one standard."[123] Defendants offer no

---

employment in excess of [forty hours] at a rate not less than one and one-half times the regular rate at which he is employed").

[117] *See McKnight v. D. Houston, Inc.*, 756 F. Supp. 2d 794, 802 (S.D. Tex. 2010) (explaining that the collective action certification process is not "an opportunity for the court to assess the merits of the claim by deciding factual disputes or making credibility determinations" (citing *Bouaphakeo v. Tyson Foods, Inc.*, 564 F. Supp. 2d 870, 893 (N.D. Iowa 2008))).

*See also Hoffmann-La Roche*, 493 U.S. at 174 (explaining that "courts must be scrupulous to respect judicial neutrality," and must therefore "take care to avoid even the appearance of judicial endorsement of the merits of the action" when assessing whether to certify a collective).

[118] *See* Joint Objs. at 13 (citing *Falcon v. Starbucks Corp.*, 580 F. Supp. 2d 528, 532 (S.D. Tex. 2008)).

[119] *See id.*

[120] That is, now defunct in the Fifth Circuit.

[121] *See Falcon*, 580 F. Supp. 2d at 529 ("Pending before the Court is Defendants' Motion to Decertify Collective Action."); *Swales*, 985 F.3d at 437 (noting that step two of the *Lusardi* approach is "often prompted by a motion to decertify").

[122] *See Swales*, 985 F.3d at 434, 436.

[123] *Falcon*, 580 F. Supp. 2d at 534.

explanation for how *Falcon*'s analysis at *Lusardi*'s second step deviated from scrutiny that *Swales* demands here.[124] Nor how *Swales* upends *Falcon*'s conclusion that variations in work and schedules don't necessarily preclude a similarly situated finding.[125]

***Fourth***, Defendants argue that this case is analogous to *Repass v. TNT Crane & Rigging, Inc.*, where a court in this District determined that a group of crane operators were not similarly situated.[126] *Repass*, however, concerned employees who worked at three different locations, brought three separate categories of FLSA claims, and couldn't identify a "common policy" applicable to the entire collective.[127] Here, by contrast, Plaintiffs and their fellow detention officers each worked at the Facility, bring the same type of FLSA claim, and worked under the same alleged policy of non-payment for pre- and post-work time.[128] The Court therefore agrees with Judge Castañeda that *Repass* is distinguishable.[129]

---

[124] *See Loy*, 71 F.4th at 336 (observing the "similarities between *Swales* and *Lusardi*'s second step").

*See also id.* (citing *Falcon* post-*Swales*); *Paschal v. Perry's Restaurants, Ltd.*, No. 1:22-CV-00027-RP, 2023 WL 2784864, at *6 (W.D. Tex. 2023) (same), *report and recommendation adopted*, No. 1:22-CV-27-RP, 2023 WL 3483902 (W.D. Tex. May 16, 2023).

[125] *See Falcon*, 580 F. Supp. 2d at 534–540; *see also supra* note 115 and accompanying text.

While Defendants also argue that the plaintiffs in *Falcon* produced more evidence than Plaintiffs did here, *see* Joint Objs. at 13–14, the Court has concluded that Plaintiffs have produced sufficient evidence to support a similarly situated finding. *See supra* Section III.C.2.a.

[126] *See* Joint Objs. at 14–15 (citing *Repass v. TNT Crane & Rigging, Inc*., No. MO18CV00107DCRCG, 2022 WL 2763705 (W.D. Tex. 2022), *objs. overruled*, 2022 WL 18356715 (W.D. Tex. Feb. 24, 2022)).

[127] *See Repass*, 2022 WL 2763705, at *7–8.

[128] *See supra* notes 116 and accompanying text; *see also* R. & R. at 16.

[129] *See* R. & R. at 16.

Simply put, Plaintiffs have produced evidence indicating the proposed collective worked in similar factual and employment settings for the purposes of their FLSA claims.[130] The Court therefore finds (as Judge Castañeda did) that the first *Lusardi* factor weighs in favor of a similarly situated finding.

**b. Defenses Available to Defendants**

The Court next considers whether "whether [Defendants'] defenses are so individualized that it is inefficient or unmanageable to proceed with a representative class."[131] "Even though a 'defense may require specific factual inquiries about each Plaintiff,' when the Defendant asserts the defense against each Plaintiff, 'collective treatment is less problematic.'"[132]

Defendants assert three primary defenses to Plaintiffs' claims, arguing that:

(1) under the Portal-to-Portal Act,[133] the pre- and post-work time for which Plaintiffs seek compensation isn't compensable;[134]

(2) detention officers are already compensated for pre- and post-work time under their CBA;[135] and

(3) any time left unaccounted for is *de minimis* and therefore non-compensable.[136]

---

[130] *White v. Wood Grp. Mustang, Inc.*, No. 4:21-CV-3985, 2024 WL 4266761, at *4 (S.D. Tex. Sept. 23, 2024) ("[T]his Court need only find that the proposed collective is 'similarly situated,' not 'identically situated." (citing *Klick v. Cenikor Found.*, 94 F.4th 362, 372 (5th Cir. 2024))).

[131] *Hampton*, 2024 WL 1664753, at *4 (quoting *Cortez*, 646 F. Supp. 3d at 854).

[132] *Cortez*, 646 F. Supp. 3d at 854 (quoting *Segovia v. Fuelco Energy LLC*, No. 17-cv-1246, 2021 WL 2187956, at *10 (W.D. Tex. May 28, 2021)).

[133] 29 U.S.C. § 251.

[134] *See* Def.'s Joint Resp., ECF No. 59, at 21–23.

[135] *See id.* at 23.

[136] *See id.* at 23–24.

Judge Castañeda concluded that these defenses' "global[] applic[ation] across Plaintiffs suggest[s] that the plaintiffs are similarly situated."[137]

Defendants object to that conclusion for two reasons. ***First***, they argue that "which defense will be applicable to which Plaintiff rests upon the factual support for each claim."[138] To illustrate that point, Defendants cite *Repass*, where another court determined that individualized analyses relative to a defendant's Portal-to-Portal Act and *de minimis* time defenses weighed against a similarly situated finding.[139] Again, though, *Repass* concerned employees at three different locations, working under varying pay policies, and bringing different combinations of claims.[140] "***[B]ased on*** [***those***] ***factual variances among the Plaintiffs***," the court determined that "the analyses regarding [the defendant's] . . . Portal-to-Portal Act[] and *De Minimis* time defenses w[ould] be highly individualized."[141]

Plaintiffs and the proposed collective bear none of those "factual variances"—each worked as a detention officer at the Facility, were subject to the same policies, and bring FLSA claims stemming from allegedly compensable pre- and post-work time.[142] Although Defendants insist that their Portal-to-Portal Act, CBA, and *de minimis* defenses will require "individualized" analyses, they don't actually explain how those analyses would vary among detention officers.[143]

---

[137] *See* R. & R. at 17 (quoting *Britt*, 2022 WL 331210, at *4 (internal quotations omitted)).

[138] Joint Objs. at 16.

[139] *See id.* (citing *Repass*, 2022 WL 2763705).

[140] *Repass*, 2022 WL 2763705, at *5, *8.

[141] *Id.* at *9 (emphasis added).

[142] *See, e.g.*, Gomez Decl. at 29–30; Decls.

[143] *See* Joint Objs. at 16–17.

Given the similarities among detention officers,[144] the Court sees no reason that individualized inquiries would be necessary to answer whether the pre- and post-work time at issue here is compensable under the Portal-to-Portal Act.[145] Nor does the Court see why Defendants couldn't use representative testimony to establish whether the subject time was (1) "already paid pursuant to the CBA"; or (2) *de minimis*.[146] As the Court previously explained, collective actions let "plaintiffs (***and defendants***) take advantage of representative evidence—that is, sample or statistical evidence that may establish (or negate) liability on a collective-wide basis."[147]

***Second***, Defendants argue that Judge Castañeda failed to consider whether their defenses bar the claims at issue here.[148] According to Defendants, although "[c]ourts must **be cautious** about opining on or endorsing the merits of a plaintiff's action at the notice stage," "[i]n some

---

[144] *See supra* Section III.C.2.a.

[145] *See supra* note 10 and accompanying text (noting Plaintiffs' allegations that Defendants required detention officers to arrive 15–20 minutes before their shifts and stay 15–30 minutes late without compensation); *see also, e.g.*, *Britt*, 2022 WL 331210, at *4 (concluding that whether "the time the Plaintiffs have claimed as overtime is . . . compensable" was "globally applicable across Plaintiffs" and, thus, could be answered collectively).

[146] *See* Joint Opp. at 32.

*See also, e.g.*, *Dollery v. Post Acute Med., LLC*, No. 6:18-CV-00104, 2023 WL 2249157, at *6 (S.D. Tex. Feb. 24, 2023) ("[R]epresentative evidence and common proof can be used to make . . . determinations as to . . . de minimis claims."); *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 460 (2016) ("In FLSA actions, inferring the hours an employee has worked from a study [of a representative sample] has been permitted by the Court so long as the study is otherwise admissible." (citations omitted)).

[147] *Gomez*, 636 F. Supp. at 749–50 (citing *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 459 (2016) (emphasis added)).

*See also Falcon*, 580 F. Supp. 2d at 540 (determining that "defenses c[ould] be adequately raised at a trial involving representative testimony" and observing that "Courts have allowed the use of representative testimony in cases involving allegations of unpaid overtime" (citing cases)).

[148] *See* Joint Objs. at 10–12, 16–17.

instances, the Court must decide whether plaintiffs may bring FLSA claims at all."[149] And, indeed, the Fifth Circuit suggested in *Swales* that courts shouldn't defer certain threshold issues "until after notice [of a collective action] is sent out."[150]

Defendants' defenses, however, aren't the sorts of "threshold issues" that require resolution before sending notice. In *Swales*, the Fifth Circuit identified two categories of issues that require pre-notice resolution.[151] The first such category includes issues that could "bar[] an employee from bringing a lawsuit in general," such as an arbitration agreement.[152] As the Fifth Circuit observed, "notice [of a collective action] can only go to 'potential participants.' And alerting those who cannot ultimately participate in the collective 'merely stirs up litigation,' which is what [the Supreme Court has] flatly proscribe[d]."[153] Here, none of Defendants' defenses cast doubt on whether the detention officers may bring suit in federal court or participate in a collective action. The first category is therefore inapposite.

The second such category includes issues that could "bar[] application of the FLSA."[154] The issue that animated *Swales* was whether workers were properly classified as "employees" (in which case they could bring FLSA claims) or "independent contractors" (in which case they couldn't).[155] The Fifth Circuit determined that issue was ripe for pre-certification resolution, reasoning that:

---

[149] *Id.* at 11 (citing *Cortez*, 646 F. Supp. 3d at 853).

[150] *See Swales*, 985 F.3d at 441.

[151] *See id.*

[152] *See id.*

[153] *Id.* (citing *JPMorgan*, 916 F.3d at 502).

[154] *See id.*

[155] *See id.* at 433.

> Just as we held it was improper to ignore evidence of the arbitration agreements in *JPMorgan*, it's improper to ignore evidence of other threshold matters, like whether the plaintiffs are 'employees' such that they can bring an FLSA claim.[156]

Unlike in *Swales*, though, Defendants' Portal-to-Portal Act, CBA, and *de minimis* defenses don't go to whether Plaintiffs or their fellow detention officers can bring FLSA claims in the first place. Those defenses instead go to the merits of Plaintiffs' claims—and, specifically, whether Defendants failed to properly pay detention officers for compensable pre- and post-work time.[157] "Nothing in *Swales* indicates or encourages courts to circumvent the notice analysis and move directly to the merits. In fact, *Swales* discourages courts from weighing in on the merits at this point."[158] The Court therefore concludes that Defendants' defenses are not "threshold" issues that must be resolved before the Court can certify a collective.

Simply put, "the focus of the inquiry" at this stage is "not whether a plaintiff 'will ultimately prevail in proving all the elements of the alleged FLSA violation[,]' but whether the merits of the proposed collective's case can be decided collectively."[159] The Court agrees with

---

[156] *Id.*

[157] *See* Joint Opp. at 29–32; Joint Objs. at 10–12, 16–17.

[158] *Torres*, 2021 WL 3419705, at *10 (citing *Swales*, 985 F.3d at 436).

*See also Swales*, 985 F.3d at 434 (observing that the Supreme Court has even admonished that district courts may not "signal approval of the merits" at the notice stage (first citing *Hoffmann-La Roche Inc.*, 493 U.S. at 169; and then citing *JPMorgan*, 916 F.3d at 500–02)).

*See also Garcia-Alvarez v. Fogo De Chao Churrascaria (Pittsburgh) LLC*, No. 4:21-CV-00124, 2022 WL 2119542, at *5 (E.D. Tex. June 13, 2022) ("[O]ther district courts in the Fifth Circuit agree that the similarly situated determination is not an opportunity for courts to assess the merits of the claim by deciding factual disputes or making credibility determinations." (citing cases)).

[159] *Garcia-Alvarez*, 2022 WL 2119542, at *5 (quoting *Sterling v. Greater Hous. Transp. Co.*, No. CV H-20-910, 2021 WL 2954663, at *2 (S.D. Tex. July 14, 2021)).

Judge Castañeda that Defendants' defenses are "globally applicable across Plaintiffs" and can be resolved collectively.[160] This factor therefore weighs in favor of a similarly situated finding.

**c. Fairness and Procedural Considerations**

Finally, the Court turns to the fairness and procedural considerations associated with certifying a collective here. "Under this factor, the Court considers 'the primary objectives of the FLSA § 216(b) collective action: (1) to lower costs to the plaintiffs through the pooling of resources, and (2) to limit the controversy to one proceeding which efficiently resolves common issues of law and fact that arise from the same alleged activity.'"[161]

Judge Castañeda observed that "denial of collective action [in this case] could lead to at least 150 potential opt-in plaintiffs . . . filing their own lawsuits against Defendants, based on the same pattern of violations as alleged by the named Plaintiffs."[162] Judge Castañeda further concluded that "one proceeding will likely be able to efficiently resolve the common issue of whether Plaintiffs are owed overtime payments." For these reasons, Judge Castañeda concluded that the fairness and procedural considerations favor proceeding with a collective action.[163]

Defendants disagree—arguing that, while collective actions can promote resource conservation and judicial economy, that's only true when collective members are similarly

---

[160] *See* R. & R. at 17 (citing *Britt*, 2022 WL 331210, at *4).

*Cf. Segovia*, 2021 WL 2187956, at *11 ("Even if Defendant must pose an inquiry to each of the fifty-eight Plaintiffs, the Court does not see how doing so 'in one collective trial is any less difficult' than posing the same inquiry in separate trials." (citing *Snively v. Peak Pressure Control, LLC*, 314 F. Supp. 3d 734, 743 (W.D. Tex. 2018))).

[161] *Snively*, 314 F. Supp. 3d at 743 (citation omitted); *see also Hoffmann-La Roche Inc.*, 493 U.S. at 170 (indicating that Congress's goal in creating the collective action mechanism was to give employees "the advantage of lower individual costs to vindicate rights by the pooling of resources").

[162] R. & R. at 18.

[163] *Id.* at 19.

situated.[164] According to Defendants, each individual employee "will need to show, through their Records of Presence and their paystubs, that Defendants violated the FLSA with regard to their pay on a particular day in a particular circumstance."[165] This, Defendants argue, means that Plaintiffs won't be able to show liability on a collective-wide basis, which would negate the "judicial economy achieved" by proceeding as a collective.[166]

Defendants are correct to highlight that "[c]onserving resources and judicial economy are only achieved when the court is able to define a class of truly similarly situated employees."[167] Here again, though, Defendants' arguments sputter where they fail to account for the availability of representative testimony in collective actions.[168]

Resolving claims in a single proceeding would prove far more cost-effective and efficient than doing so in over 100 separate proceedings[169]—irrespective of whether Defendants' damages

[164] Joint Objs. at 17–18.

[165] *Id.* at 18.

[166] *See id.* at 18–19.

[167] *See Kubala v. Setpoint Integrated Sols., Inc.*, No. 2:25-CV-00108, 2026 WL 2001201, at *5 (S.D. Tex. Apr. 29, 2026) (citing *Swales*, 985 F.3d at 442).

*See also* Joint Objs. at 17 ("Lowering the costs of a lawsuit generally, through the pooling of resources, is advisable and appropriate for **legitimately similarly situated** groups of employees . . . .").

[168] *See supra* notes **Error! Bookmark not defined.–Error! Bookmark not defined.** and ac companying text.

[169] *See supra* note 161 and accompanying text.

exposure (if found liable) differs between employees.[170] The employees in the proposed collective each worked at the Facility under the same compensation policies that Plaintiffs allege are unlawful under the FLSA.[171] Defendants' defenses aren't employee-specific.[172] And Plaintiffs have produced evidence that shows their experience is representative of the proposed collective.[173] The Court therefore concludes that the fairness and procedural considerations weigh in favor of a similarly situated finding.

*****

As explained above, each *Lusardi* consideration tips in favor of a similarly situated finding.[174] The Court therefore finds that Plaintiffs and their fellow detention officers at the Facility are "similarly situated" such that they may proceed with a collective action on their FLSA overtime claims.

---

[170] *See, e.g.*, *Fobbs v. Riverway Bus. Servs., Inc.*, No. 4:23-CV-0624, 2023 WL 8530844, at *5 (S.D. Tex. 2023) (concluding that "whether any particular [employee] can recover damages on the [subject FLSA] claim" is an issue that can be decided after determining whether a proposed collective is "similarly situated" (citing cases)), *report and recommendation adopted*, No. 4:23CV0624, 2023 WL 8532396 (S.D. Tex. Dec. 8, 2023); *see also Albanil v. Coast 2 Coast*, 444 F. App'x 788, 806 (5th Cir. 2011) ("Damages may be awarded to non-testifying plaintiffs based on the 'fairly representational' testimony of other employees.").

*Cf. Steering Comm. v. Exxon Mobil Corp.*, 461 F.3d 598, 602 (5th Cir. 2006) (holding, in the Rule 23 context, that "the necessity of calculating damages on an individual basis will not necessarily preclude class certification").

[171] *See supra* Section III.C.2.a.

[172] *See supra* Section III.C.2.b.

[173] *See supra* notes 92–98 and accompanying text.

[174] *See supra* Sections III.C.2.a–c.

### 3. Notice

#### a. Who will receive the notice

Having determined that Plaintiffs and their fellow detention officers are similarly situated, the Court must now define the contours of who may be included in the collective action (and, thus, who will receive notice).[175] The Complaint defines the proposed collective as "[a]ll of Defendants' current and former ***'Detention Officers' in Texas***."[176] In the Motion, however, Plaintiffs ask the Court to certify a comparatively broader collective of "all ***persons*** currently or formerly employed by Defendants."[177]

Judge Castañeda recommends adopting a hybrid of the two definitions to include Defendants' current and former ***detention officers***, but to exclude the requirement that the detention officers be "in Texas."[178] Defendants object to the absence of geographic limitation in Judge Castañeda's definition.[179] According to Defendants, Plaintiffs haven't submitted any evidence "related to any facility other than the El Paso Immigration and Customs Enforcement Facility,"[180] and the detention officers at issue here "all work at the same geographic location."[181] For that reason, Defendants argue that

(1) Judge Castañeda's definition is overbroad; and (thus)

---

[175] *See Aghatise*, 2025 WL 964226, at *2 ("[I]t is up to the district court to define the contours of the term 'similarly situated' as it determines who may be included in a collective action.").

[176] *See* Compl. at 8 (citation modified).

[177] *See* Mot. at 21 (emphasis added).

[178] *See* R. & R. at 21.

[179] *See* Joint Objs. at 10, 19.

[180] *Id.* at 19.

[181] *Id.*

(2) if the Court finds that their detention officers are similarly situated, the collective should be limited to ***detention officers who worked at the Facility***.[182]

Although Plaintiffs have adequately shown that detention officers at the Facility are similarly situated,[183] the Court agrees with Defendants that the record doesn't support a finding that officers at the Facility are similarly situated to officers elsewhere.[184] The Court will therefore authorize notice only to those who worked as detention officers at the Facility (the "Potential Opt-in Plaintiffs").

To facilitate the notice process, Judge Castañeda recommends ordering Defendants to provide Plaintiffs with the names and mailing addresses of Potential Opt-in Plaintiffs.[185] Defendants don't object to that recommendation.[186] Seeing no clear error or abuse of discretion,[187] the Court will adopt Judge Castañeda's recommendation and order Defendants to provide Plaintiffs with the names and mailing addresses of Potential Opt-in Plaintiffs in the manner provided below.[188]

---

[182] *See id.* at 10, 19.

[183] *See supra* Section III.C.

[184] *See, e.g.*, *Parker v. Silverleaf Resorts, Inc.*, No. 3:14-CV-2075-B, 2017 WL 1550522, at *10 (N.D. Tex. May 1, 2017) (declining to make "similarly situated" finding regarding employees at facilities for which plaintiffs didn't produce evidence).

[185] *See* R. & R. at 19 (concluding that "preliminary discovery from Defendants as to the names and addresses of potential opt-in plaintiffs[] is appropriate here").

*See also Hoffmann-La Roche Inc*, 493 U.S. at 169–70 (explaining that courts have discretion to permit discovery of the names and addresses of potential opt-in plaintiffs in collective actions).

[186] Joint Objs. at 20 ("Defendants do not object to the disclosure requirements recommended by the Magistrate.").

[187] *See supra* notes 48–49 and accompanying text.

[188] *See infra* Section IV.

### b. What the notice will contain

As an attachment to the Motion, Plaintiffs submitted a Proposed Notice, to which Defendants didn't object.[189] Judge Castañeda recommends modifying the Proposed Notice to:

(1) add a statement informing Potential Opt-in Plaintiffs "that they have a right to select their own counsel to represent them";

(2) correct the cause number from 3:20-cv-00112-RFC to 3:21-cv-00269-DCG;

(3) identify the undersigned as a District Judge rather than as a Magistrate Judge; and

(4) correct Plaintiffs' last names.[190]

Defendants don't object to these modifications,[191] and they are neither clearly erroneous nor an abuse of discretion.[192] The Court will therefore adopt the Proposed Notice with Judge Castañeda's recommended modifications.

### c. How the notice will be sent

Plaintiffs propose (and Judge Castañeda recommends) mailing notice and giving Potential Opt-in Plaintiffs 90 days to opt in by filing consent forms with the Court.[193] Defendants don't object to Plaintiffs' proposal,[194] and the Court sees no clear error or abuse of

---

[189] *See generally* Joint Opp.

[190] *See* R. & R. at 19–20.

[191] *See* Mot. at 20 ("Defendants do not object to the proposed language changes to the Notice in the [R. & R.] as it relates to the freedom of an opt-in Plaintiff to select counsel of their own choosing, the correct cause number, the correct identification of District Judge Guaderrama, and the correct names of the actual Plaintiffs.").

[192] *See supra* notes 48–49 and accompanying text.

[193] *See* Mot. at 18.

[194] *See* Joint Objs. at 20 ("Defendants do not object to the proposed method of notice or response time.").

discretion in Judge Castañeda's recommendation to adopt that proposal.[195] The Court will therefore adopt Plaintiffs' proposal.

### D. Plaintiffs' Request to Equitably Toll Claims

Finally, the Court must address Plaintiffs' request that the Court equitably toll claims for detention officers whom Plaintiffs didn't previously seek to join to this case—*i.e.*, those whose claims the Court hasn't already tolled.[196] Judge Castañeda recommends denying this request because Plaintiffs failed to show extraordinary circumstances warranting equitable tolling.[197]

No one objected to that recommendation,[198] and it is neither clearly erroneous nor an abuse of discretion.[199] The Court therefore accepts Judge Castañeda's recommendation and denies Plaintiffs' request for equitable tolling.

## IV. CONCLUSION

The Court therefore **OVERRULES** Defendants' "Joint Objections to the United States Magistrate Judge's Report and Recommendation" (ECF No. 65) and **ACCEPTS** Magistrate Judge Castañeda's "Report and Recommendation" (ECF No. 63) **WITH MODIFICATIONS**.

---

[195] *See supra* notes 48–49 and accompanying text.

[196] *See* Mot. at 19–20.

*See also supra* notes 12–14 and accompanying text.

[197] *See* R. & R. at 21; *see also Sandoz v. Cingular Wireless, L.L.C.*, 700 F. App'x 317, 320 (5th Cir. 2017) ("For [equitable tolling] to apply, a plaintiff must show (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." (citation modified)).

[198] *See* Joint Objs. at 3 ("Defendants do not object to the Report's recommendation that Plaintiffs' request for equitable tolling be denied.").

[199] *See supra* notes 48–49 and accompanying text.

The Court thereby **GRANTS** Plaintiffs' "Opposed Motion for Judicially Supervised Notice Under 29 U.S.C. § 216(b)" (ECF No. 58) **IN PART** to the extent the Motion asks the Court to:

(1) certify a collective action under 29 U.S.C. § 216(b) consisting of:

(a) current and former detention officers who worked for Defendants between May 13, 2019 and the present and whom Plaintiffs sought to add as named plaintiffs in their "Opposed Motion for Leave to File Plaintiffs' Amended Complaint" (ECF No. 24); and

(b) all other detention officers—whether or not current employees of Defendants—who worked for Defendants at the Facility within the three years preceding this Order (together with subcategory (a), the "Potential Opt-in Plaintiffs");

(2) order Defendants to produce the names and addresses of all Potential Opt-in Plaintiffs; and

(3) authorize mailing notice to all Potential Opt-in Plaintiffs.

**By August 7, 2026**, Defendants **SHALL PROVIDE** Plaintiffs with a computer-readable data file containing the names, addresses, email addresses, and telephone numbers of all Potential Opt-in Plaintiffs.

Subject to the changes noted above,[200] the Court **ACCEPTS** Plaintiffs' proposed form of notice and authorizes Plaintiffs to issue notice to the Potential Opt-in Plaintiffs.

[200] *See supra* Section III.C.3.b.

The Court **DENIES** Plaintiffs' "Opposed Motion for Judicially Supervised Notice Under 29 U.S.C. § 216(b)" (ECF No. 58) **IN PART** to the extent the Motion asks the Court to expand the scope of its prior order equitably tolling the statute of limitations period for persons that Plaintiffs previously identified as Potential Opt-in Plaintiffs.[201]

**So ORDERED and SIGNED this 24th day of July 2026.**

**DAVID C. GUADERRAMA**
**SENIOR U.S. DISTRICT JUDGE**

[201] *See Gomez*, 636 F. Supp. at 762 ("The Court . . . equitably tolls the statute of limitations for those persons Plaintiffs identify in their Motion as potential opt-in plaintiffs. Their statute of limitations is tolled from [May 13, 2022] to the day the Court decides whether this case can properly proceed as a collective action." (emphasis omitted)).